BERGHAGE *v.* CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—SPECIFICATIONS FOR CITY PRINTING.

Objection that specifications in notice for bids for city printing were not sufficiently specific to enable intelligent bidding or intelligent action on part of city in accepting bid, *held,* without merit.

2. SAME—AWARDING CONTRACT FOR PRINTING—NEWSPAPER.

Where city charter provided that city's printing contract might be wholly with one daily newspaper, or "first printing" be under contract with daily paper, and "second printing" with weekly, objection that contract for all of said printing in daily newspaper was not in accordance with terms of advertisement for bids, *held,* not sustainable.

3. SAME—FRAUD.

In suit to enjoin performance of contract with city for city printing, finding of trial court that no fraud, injustice, or violation of trust is shown, *held,* justified by record.

4. SAME—GOOD FAITH IN AWARDING CONTRACT.

That cost to city of its printing under contract with daily newspaper having much larger circulation than publications of other bidders will be several thousand dollars more than under other bids submitted, *held,* not conclusive that said contract was not entered into in good faith and for best interest of city.

5. SAME—INJUNCTION—FRAUD—ABUSE OF DISCRETION.

Where city charter and advertisement for bids reserved to city commission power to reject any or all bids for city printing, performance of contract awarded to newspaper with much larger circulation than that of other bidders may not be enjoined, in absence of showing of fraud or abuse of discretion, although cost to city will be more than under other bids submitted; fair inference being that larger circulation will more thoroughly accomplish purpose for which municipal affairs are published, justifying payment of greater consideration therefor.

As to sufficiency of specifications for guidance of bidder for public contract, see annotation in 30 L. R. A. (N. S.) 214.

On awarding of public contract to lowest responsible bidder, see annotation in 38 L. R. A. (N. S.) 656.

As to discretion in choosing between bidders for public contract, see annotation in 38 L. R. A. (N. S.) 653.

Appeal from Superior Court of Grand Rapids; Shaw (Arthur F.), J.   Submitted October 27, 1932. (Docket No. 44, Calendar No. 36,728.)   Decided January 3, 1933.

Bill by Martin Berghage and others against City of Grand Rapids, a municipal corporation, and Herald Publishing Company, a Michigan corporation, to enjoin performance of a contract between defendants relative to public printing.   Bill dismissed.   Plaintiffs appeal.   Affirmed.

*Shelby B. Schurtz,* for plaintiffs.

*Dale Souter* and *Robert S. Tubbs,* for defendant city.

*Butterfield, Keeney & Amberg* (*Walsh, Walsh & O'Sullivan,* of counsel), for defendant Herald Publishing Company.

North, J.   Plaintiffs, as residents and taxpayers of the city of Grand Rapids, seek an injunction to prevent defendants from carrying out a contract by which the Herald Publishing Company was engaged to do the public printing for the city of Grand Rapids from May 2, 1932, to May 1, 1933.   It is alleged by plaintiffs that the contract was entered into by the city commission arbitrarily, unjustly, in bad faith, and that in so doing a fraud has been perpetrated upon the taxpayers of Grand Rapids.   After a hearing in open court, the trial judge found that the material allegations of the bill of complaint had not been established, and decreed dismissal.   Plaintiffs have appealed.

In response to an advertisement, four bids for the city printing were received by the city commission.

The city charter provides that the commission proceedings shall be published in a daily newspaper; and this is denominated "first city printing." Other municipal publications, advertisements, or notices, such as relate to tax sales, etc., are called "second city printing," and may be published either in a daily or weekly paper. The advertised notice for bids gave this information to prospective bidders, and also that the city commission reserved the right to reject any bid submitted. In part the advertisement for bids signed by the city clerk reads:

"All items not required by statute, charter, or ordinance to be published in a daily paper, shall be considered second printing and published in a weekly paper. In the printing of tax notices, in case of error, a penalty shall be imposed sufficient to cover the cost of re-advertising.

"The right is reserved to consider circulation in awarding contracts and to reject any and all bids if in the opinion of the city commission the public interest so requires."

Plaintiff Martin Berghage is the publisher with the Standard Bulletin Publishing Company whose bid covered "second printing" only. Plaintiff Andrew Van Ysseldyke in behalf of the Northwestern Publishing Company submitted a bid covering both "first and second printing." Each of these bids was at a less rate per column inch than the bid of the defendant Herald Publishing Company, whose bid of 65 cents per column inch covered both "first and second printing." On May 19, 1932, the committee to which the matter had been referred recommended that the city commission accept the bid of the Herald Publishing Company, and that the contracts be prepared and submitted for approval. The committee's recommendation was unanimously

adopted by the commission, and on the 26th of May, 1932, the prepared contract was formally executed. At a meeting of the city commission on the same date a motion was made to reconsider the contract relative to "second printing," but the motion was lost. This bill for injunctive relief was filed June 10th following.

The first question raised by appellants is that the specifications contained in the notice for bids were not sufficiently specific to enable intelligent bidding or intelligent action on the part of the city in accepting a bid. The record discloses nothing extraordinary about the legal publication of city proceedings; nor does the record disclose any complaint prior to the time of submitting bids of inability to secure necessary information. And, as noted above, two of these plaintiffs submitted bids on the city printing without apparent difficulty. The only lack of particularity or detail stressed is that the size of type to be used was not specified. However, it clearly appears that all parties concerned were familiar with the rather well-established methods of doing the city's printing. The record reveals no ground for claiming a surprise or prejudice because of lack of information necessary to make or accept a bid intelligently. We find no merit in this phase of appellants' appeal. The following questions are also raised by appellants' brief:

"Does the law require Grand Rapids printing contracts to be awarded in accordance with the terms of the advertisement to bidders?

"May the city commission, under the color of rejection of any and all bids and without any resolution of rejection, ignore its own advertisement for bids, and, without any specifications having been bid upon, evade the law and award a printing contract

to the highest bidder without giving any plausible reason therefor?

"Was the awarding of the printing contract to the Herald an abuse of discretion, arbitrary, unjust, wasteful, and in bad faith?"

Title 5, section 31, of the Grand Rapids city charter, provides:

"The city commission shall annually contract with the publisher or publishers of one or more daily or weekly newspapers published and circulated within the city to do the printing of the city or some portion thereof, which contract shall be let, if to a weekly newspaper, to the lowest bidder therefor, and if to a daily newspaper, to the lowest bidder therefor. It shall be discretionary with the city commission to let one part of said printing to a weekly newspaper and other parts to a daily newspaper of the city; provided, that the regular proceedings of the city commission shall be published in a daily newspaper. * * * In letting such contracts the city commission shall have the right to reject any or all bids therefor, whenever in the judgment of a majority of the city commission the public interests of the city may require."

In the case of *Leavy* v. *City of Jackson*, 247 Mich. 447, we recently held, quoting syllabi:

"Reservation of right to reject any and all bids, where city authorities have power to make such reservation, gives right to let contract to any bidder and reject others, although one securing contract is not lowest bidder, provided authorities act in good faith in the exercise of honest discretion.

"Exercise of discretion by city authorities to accept or reject bids will be controlled by courts only when necessary to prevent fraud, injustice, or violation of trust; that authorities acted in good faith in awarding contract being presumed."

In view of the quoted provision of the city charter by which it is plainly specified that the city's printing contract may be wholly with one daily newspaper, or the "first printing" be under contract with a daily paper and the "second printing" with a weekly, we find no ground for appellants' complaint that the instant contract was not entered into in accordance with the terms of the advertisement for bids. The advertised notice for bids may have been inaptly worded, but this was a mere irregularity not prompted by fraud or deceit. There is no showing that any prospective bidder was misled. It did not invalidate the contract. Further, the quoted portion of the charter vests the city commission with the power "to reject any and all bids." The trial judge expressly found that "no fraud, injustice or violation of a trust" is shown by this record; and with that finding we are in full accord. It is true that the cost to the city of the printing under the Herald Publishing Company contract will be several thousand dollars more than under other bids submitted; but this circumstance is by no means conclusive that the contract entered into was not in good faith considered by the commission to be for the best interest of the city. The Herald Publishing Company publishes and circulates in and about Grand Rapids a daily newspaper which has a very much larger circulation than the publication of any other bidder. It is a fair and almost necessary inference that the larger the circulation of the publication the more thoroughly will the purposes for which municipal affairs are published be accomplished; and, circulation being larger, a greater consideration may fairly be demanded by the publisher and paid by the city. As noted in *Leavy* v. *City of Jackson, supra,* such a bid may be higher in

terms of dollars, but lower if measured by circulation.

No other question meriting review is presented by this record. We find no reason for disturbing the decree of the trial court. It is affirmed, with costs to appellees.

McDONALD, C. J., and CLARK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.