GROVES v DEPARTMENT OF CORRECTIONS

Docket No. 302640. Submitted June 10, 2011, at Lansing. Decided
    December 6, 2011, at 9:00 a.m.

   Securus Technologies, Inc., Ralph Groves, an employee of Securus, and
   four other employees of Securus brought an action in the Ingham
   Circuit Court against the Department of Corrections, the Depart-
   ment of Technology, Management and Budget, and Public Commu-
   nications Services, Inc. (PCS), challenging a contract bidding process
   run by the state defendants. PCS was the winning bidder. Defendants
   moved for summary disposition. The court, William E. Collette, J.,
   granted the motion, concluding that plaintiffs lacked standing to
   bring the case. Plaintiffs appealed.

       The Court of Appeals *held*:

       1. Recent Michigan caselaw uniformly conditions taxpayer
   standing on the plaintiff taxpayers having suffered some harm
   distinct from that inflicted on the general public. The individual
   plaintiffs in this case asserted that they had suffered particular
   harm because they could lose their jobs at Securus as a result of
   the contract having been awarded to PCS, but that was not the
   type of injury contemplated by the standing inquiry given that the
   individual plaintiffs had no expectancy that the state would award
   the contract to Securus. Nor did plaintiffs suffer a cognizable
   injury as members of the general public because even if plaintiffs'
   factual allegations were true, there would be no increased expen-
   ditures by the state as a result of PCS's winning bid.

       2. The only circumstance that may provide a basis for an action to
   review the bidding process is the presence of evidence of fraud, abuse,
   or illegality, and such an action must be brought by the proper public
   official.

       3. When alleging fraud, the circumstances constituting fraud or
   mistake must be stated with particularity, although conditions of
   mind may be alleged generally. In this case, plaintiffs alleged fraud in
   the bidding process and argued that the fraud claim established
   standing to seek injunctive relief, but, in addition to plaintiffs' not
   being the proper party to bring a claim of fraud, plaintiffs' allegations
   failed to state a claim for fraud because there was no evidence
   regarding defendants' state of mind and the alleged errors in the

process provided no implication of malice. Further, plaintiffs alleged no cognizable injury arising from the fraud.

4. Under MCL 600.2041(3), an action to prevent the illegal expenditure of state funds may be brought in the names of at least five taxpaying residents. In this case, plaintiffs argued that they had standing as taxpayers seeking the prevention of the illegal expenditure of state funds. However, the expenditures referred to by plaintiffs would occur regardless of the identity of the successful bidder, so standing was not established.

5. To establish standing to seek a declaratory judgment under MCR 2.605, there must be a case of actual controversy. An actual controversy exists when a declaratory judgment or decree is necessary to guide a plaintiff's future conduct in order to preserve his or her legal rights. In this case, a judgment was not necessary to guide plaintiffs' future conduct or preserve their legal rights because the contract had already been awarded to PCS.

6. Under the Michigan Constitution, the right of all individuals, firms, corporations, and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings may not be infringed. An "investigation" is the act or process of investigating, or the condition of being investigated; to "investigate" is to search or examine into the particulars of, or examine in detail. In this case, the state defendants collected information voluntarily provided by bidders as part of a preliminary information gathering process; the passive efforts of the state did not constitute an investigation under Const 1963, art 1, § 17. Because plaintiffs failed to state a claim for fraud, declaratory judgment, or a constitutional violation, and otherwise had no standing to object to the outcome of the bidding process, the trial court properly granted summary disposition.

Affirmed.

1. ACTIONS — STANDING — PUBLIC CONTRACTS.

To have taxpayer standing, a taxpayer must have suffered some harm distinct from that inflicted on the general public; the fact that an individual may lose his or her job because the individual's employer failed to secure the winning bid on a public contract is not the type of injury contemplated by the standing inquiry because bidders for public contracts generally have no expectancy in the contract to be awarded.

2. ACTIONS — STANDING — PUBLIC CONTRACTS — FRAUD.

The only circumstance that may provide a basis for an action to review the bidding process for a public contract is the presence of

evidence of fraud, abuse, or illegality; such an action must be brought by the proper public official.

3. CONSTITUTIONAL LAW — FAIR AND JUST TREATMENT — INVESTIGATIONS.

Under the Michigan Constitution, the right of all individuals, firms, corporations, and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings may not be infringed; an "investigation" is the act or process of investigating, or the condition of being investigated; to "investigate" is to search or examine into the particulars of, or examine in detail; the passive collection of information by the state from voluntary bidders for a state contract as part of a preliminary information gathering process does not constitute an investigation (Const 1963, art 1, § 17).

*Varnum LLP* (by *Bryan R. Walters*) for Ralph Groves, Helen McCoy, William Scott, Michael Schnurer, Michael Stump, and Securus Technologies, Inc.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Matthew C. Keck* and *Jennifer M. Jackson*, Assistant Attorneys General, for the Department of Corrections and the Department of Technology, Management and Budget.

*Dykema Gossett PLLC* (by *Gary P. Gordon, Leonard C. Wolfe,* and *Courtney F. Kissel*) for Public Communications Services, Inc.

Before: WHITBECK, P.J., and MARKEY and K. F. KELLY, JJ.

MARKEY, J. Plaintiffs appeal by right from an order granting defendants summary disposition and dismissing plaintiffs' case for lack of standing.[1] Plaintiffs challenged a contract bidding process run by the Department of

---

[1] Intervening plaintiffs are not parties to this appeal. Consequently, when referring to "plaintiffs" in this opinion, we mean only Securus Technologies, Inc., and the five individual plaintiffs who are identified as its employees.

Corrections (DOC) and the Department of Technology, Management and Budget (DTMB; collectively, the state). We affirm.

The DTMB issued a request for proposal (RFP) on behalf of the DOC, soliciting proposals for the installation and maintenance of inmate telephone systems (ITS) at the DOC's facilities. The state would not directly pay the ITS provider but would expend funds administering the contract and monitoring inmate use of the system. Seven companies submitted timely bids, including plaintiff Securus Technologies, Inc., and defendant Public Communications Services, Inc. (PCS). A committee was to recommend the bidder who offered the best value in terms of technical criteria and price. Plaintiffs claim that the committee allowed PCS to alter its pricing proposal after the deadline without granting a similar opportunity to other bidders. Plaintiffs further claim that the committee erred in a number of ways in evaluating the bid proposals. PCS won the contract, and plaintiffs filed suit requesting an order nullifying the contract and requiring a rebid.

### I. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Whether a party has standing is a question of law subject to review de novo. *Manuel v Gill*, 481 Mich 637, 642; 753 NW2d 48 (2008). Questions of statutory interpretation are also subject to review de novo. *Id.* at 643.

### II. STANDING

The general rule regarding standing is set forth in *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010) (*LSEA*):

> [A] litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant.

Michigan jurisprudence has never recognized that a disappointed bidder such as Securus has the right to challenge the bidding process. See *Talbot Paving Co v Detroit*, 109 Mich 657; 67 NW 979 (1896), and *Rayford v Detroit*, 132 Mich App 248, 256-257; 347 NW2d 210 (1984).

Plaintiffs first argue that common law allows taxpayers a cause of action to enforce Michigan's public bidding requirements; therefore, the individual plaintiffs have the requisite standing. Although early cases appear to support this position, see, e.g., *Berghage v Grand Rapids*, 261 Mich 176, 177; 246 NW 55 (1933), more recent cases uniformly condition taxpayer standing on the plaintiff taxpayers having suffered some harm distinct from that inflicted on the general public. *LSEA*, 487 Mich at 372; *Waterford Sch Dist v State Bd of Ed*, 98 Mich App 658, 662; 296 NW2d 328 (1980). Plaintiffs have not alleged a cognizable injury. There is no allegation in the complaint that Securus would have won the contract but for the claimed errors in the bid evaluations. Indeed, when the government has broad discretion to choose its contractors, a bidder has no expectancy in the contract to be awarded. See *Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 290 Mich App 577, 590; 802 NW2d 682

(2010) (Murphy, C.J.); *id.* at 621-624 (K. F. Kelly, J., dissenting); see also *Trepel v Pontiac Osteopathic Hosp*, 135 Mich App 361, 378; 354 NW2d 341 (1984). The committee evaluating the bids at issue here had substantial discretion to determine their technical and financial merits.

Plaintiffs alleged that all taxpayers were harmed by the faulty process and that the individual plaintiffs suffered particular harm because they could lose their jobs. This alleged harm is not the type of injury contemplated by the standing inquiry. The individual plaintiffs had no expectancy that the state would award the contract to their employer. Moreover, the state cannot control the personnel decisions of bidders for its contracts. Indeed, if this were considered a sufficient injury, the general rule that a disappointed bidder does not have standing would be completely eliminated. Disappointed bidders could simply threaten to fire an employee if they did not win the contract and thereby claim standing to bring suit.

Further, even if plaintiffs' factual allegations are true, there is no harm to the general public. There will be no increased expenditures by the state that will have an impact on taxpayers, including the taxpayer plaintiffs. Additional costs of the winning bid will instead be charged only to inmates and the people they call from prison. Plaintiffs, either as individuals or as members of the general public, have not suffered a cognizable injury.

In fact, while they ostensibly seek to rectify a public wrong, in reality, as employees of the disappointed bidder for a government contract, plaintiffs seek to further their own interests and circumvent the century-old rule that denies standing to disappointed bidders to challenge the discretionary award of a public contract.

*Talbot*, 109 Mich at 661-662; *Rayford*, 132 Mich App at 256. "Though the act accepting the second [lowest] bid may have been against the interest of the citizens, certainly the plaintiff[, the disappointed bidder,] could have no action to redress that wrong and injury." *Talbot*, 109 Mich at 662. The rule recognizes that competitive bidding on public contracts is designed for the benefit of taxpayers and not those seeking the contract. *Id.*; *Rayford*, 132 Mich App at 256. Put differently, the purpose of competitive bidding is to guard against favoritism, fraud, corruption, and "to secure the best work at the lowest price practicable . . . ." *Lasky v City of Bad Axe*, 352 Mich 272, 276; 89 NW2d 520 (1958) (quotation marks and citation omitted). What is in the public interest must be assessed by weighing numerous factors, of which, price will be one of many that may affect that determination. See e.g., *Cedroni Assoc*, 290 Mich App at 591-593 (concluding that under the school district's fiscal management policy, the district was required to select the lowest *responsible* bidder), and *Berghage*, 261 Mich at 181-182 (concluding that the defendant city was not required to select the lowest bidder for a printing contract when a higher bidder had a larger circulation).

Litigation aimed at second-guessing the exercise of discretion by the appropriate public officials in awarding a public contract will not further the public interest; it will only add uncertainty, delay, and expense to fulfilling the contract. See *Great Lakes Heating, Cooling, Refrigeration & Sheet Metal Corp v Troy Sch Dist*, 197 Mich App 312, 314-315; 494 NW2d 863 (1992). The only circumstance that may provide a basis for an action to review the bidding process is the presence of evidence of "fraud, abuse, or illegality." *Id.* at 315. But such an action must be brought by the proper public official. *Rayford*, 132 Mich App at 257, citing *Attorney*

*General ex rel Allis-Chalmers Co v Public Lighting Comm of Detroit*, 155 Mich 207; 118 NW 935 (1908). Opening the floodgates of litigation to every disappointed bidder that believes it has been aggrieved by the bidding process would serve the interests of neither the government nor the citizen-taxpayers that the bidding process is designed to advance. *Great Lakes Heating*, 197 Mich App at 315.

Plaintiffs further assert that the allegations of fraud set forth in the complaint provide both the taxpayers and Securus with standing to seek injunctive relief under the exception discussed in *Great Lakes Heating*. We conclude, however, that in addition to not being proper parties, *Rayford*, 132 Mich App at 257, plaintiffs have failed to state a claim for fraud. When alleging fraud, "the circumstances constituting fraud or mistake must be stated with particularity," although "conditions of mind may be alleged generally." MCR 2.112(B). Although plaintiffs state with particularity a number of errors the state allegedly made during the bidding process, these allegations do not constitute fraud without evidence of defendants' state of mind. See *Hord v Environmental Research Institute of Mich (After Remand)*, 463 Mich 399, 404; 617 NW2d 543 (2000). Plaintiffs do not allege that defendants have agreed that they made mistakes, nor is there any reason to think that defendants intended to damage Securus's bid.

The alleged errors themselves provide no implication of malice. For example, plaintiffs complain that defendants considered a noncomparable system that Securus operates in another state. But it is within the state's authority to determine whether a system is similar enough to consider how well that system has worked when evaluating a new proposal. Plaintiffs also com-

plain that they did not receive credit for their past satisfactory work for the DOC, but it is for the DOC to determine the value of any prior work and whether and to what extent the prior working relationship experience was positive. In the absence of allegations that the state secretly agreed with plaintiffs' assertions and deliberately sabotaged plaintiffs' bid, plaintiffs fail to allege that defendants had the culpable mental state necessary for fraud. In addition, a claim of fraud requires the plaintiff to have suffered some injury. *Hord*, 463 Mich at 404. Plaintiffs in this case have not properly alleged any cognizable injury.

Plaintiffs next contend that this suit is authorized by MCL 600.2041(3). Under that subsection, "an action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute relating thereto may be brought" in the names of at least five taxpaying residents. *Id.* The present case is not testing the constitutionality of a statute. As for the expenditure of funds, in *House Speaker v Governor*, 443 Mich 560, 573; 506 NW2d 190 (1993), our Supreme Court held that a lawsuit seeking to enjoin the creation of a new executive agency concerned the expenditure of state funds because running the agency would necessarily involve expenditures. In this case, even if successful, litigation will not prevent public expense. Plaintiffs argue that the state will be forced to expend funds administering the contract and monitoring inmate calls, but these expenses will be necessary no matter which bidder is awarded the contract. Plaintiffs also allege that the transition to a new ITS provider will cost the state money. The documentation submitted with the complaint shows that the contractor will bear the cost of installing a new system, not the state; therefore, plaintiffs do not have standing under MCL 600.2041(3).

Plaintiffs next seek standing under MCR 2.605. "[W]henever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment." *LSEA*, 487 Mich at 372. MCR 2.605(A)(1) requires "a case of actual controversy" within the trial court's jurisdiction brought by an interested party. The key is that plaintiffs " ' "plead and prove facts which indicate an adverse interest necessitating the sharpening of the issues raised." ' " *LSEA*, 487 Mich at 372 n 20, quoting *Associated Builders & Contractors v Dep't of Consumer & Indus Servs Dir*, 472 Mich 117, 126; 693 NW2d 374 (2005),[2] quoting *Shavers v Attorney General*, 402 Mich 554, 589; 267 NW2d 72 (1978). The "actual controversy" requirement prevents courts from involving themselves in hypothetical issues, but it does not prohibit them from deciding issues before the occurrence of an actual injury. *Shavers*, 402 Mich at 589. An " 'actual controversy' exists where a declaratory judgment or decree is necessary to guide a plaintiff's future conduct in order to preserve his legal rights." *Id.* at 588.

In this case, a judgment is not necessary to guide plaintiffs' future conduct or preserve their legal rights. Plaintiffs have not suffered a cognizable injury and will not suffer such an injury in the future because the contract has already been awarded to PCS; consequently, we find no actual controversy. The declaratory judgment rule does not provide plaintiffs with standing.

Plaintiffs next submit that the Legislature intended to confer standing on taxpayers for issues brought under the bidding provisions of the Management and Budget Act, MCL 18.1101 *et seq.*, as well as restrictions on public officials' accepting gifts to influence their official actions, MCL 15.342. Plaintiffs reiterate the

---

[2] Overruled in part by *LSEA* on other grounds, 487 Mich at 371 n 18.

contention that taxpayers have standing to enforce Michigan's bidding requirements because the requirements are meant to benefit the general public. As discussed earlier in this opinion, there is no such taxpayer standing under current Michigan law. *LSEA*, 487 Mich at 372. Plaintiffs cite no caselaw to show that the facts in this case are somehow different. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007).

### III. THE FAIR AND JUST TREATMENT CLAUSE

Plaintiffs next maintain that they stated a cause of action under Const 1963, art 1, § 17, which provides: "The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." Securus alleges that it was unfairly treated and that the bidding process constitutes an investigation. This Court considered the meaning of the term "investigations" in the context of the Fair and Just Treatment Clause in *Carmacks Collision, Inc v Detroit*, 262 Mich App 207; 684 NW2d 910 (2004). The Court held that the plaintiff had failed to allege an investigation. The *Carmacks* Court found compelling the discussion of the term "investigation" in *Messenger v Dep't of Consumer & Indus Servs*, 238 Mich App 524; 606 NW2d 38 (1999), which considered the meaning of that term in the context of a statute. Examining a dictionary to determine the common meaning of "investigation," the *Messenger* Court defined the term as "the act or process of investigating or the condition of being investigated" and noted that to "investigate" means "to search or examine into the

particulars of; examine in detail." *Id.* at 534 (quotation marks and citation omitted). The *Messenger* Court did not find that there had been an investigation. The defendant in that case did no more than collect documents from public agencies and monitor a criminal proceeding against the plaintiff. *Id.* at 534-535. The Court found that these passive efforts were merely preparatory to a formal investigation. *Id.* at 535. The defendant did not "engage in a searching inquiry for ascertaining facts, nor did it conduct a detailed or careful examination of the events surrounding plaintiff's alleged misconduct." *Id.* at 534.

In *Carmacks*, the defendant merely asked for certain information and documentation to judge the bidders' qualifications, including proof of residency and that bidders' taxes were up-to-date. *Carmacks*, 262 Mich App at 211. It did not closely scrutinize the plaintiff or its activities. *Id.* "This was merely a preliminary information gathering process in which plaintiff voluntarily participated by submitting a bid. The relatively passive efforts by defendant in gathering innocuous and basic information from prospective bidders do not rise to the level of an 'investigation' as that term is properly understood." *Id.* at 211-212. The Court therefore held that the plaintiff had failed to state a claim for a violation of the Fair and Just Treatment Clause. *Id.* at 212.

We find the present case factually similar to *Carmacks*. The bidders voluntarily provided data and references. Defendants' efforts consisted of gathering and evaluating information the bidders and the bidders' references provided; consequently, Securus has failed to state a claim for a violation of the Fair and Just Treatment Clause.

Because plaintiffs failed to state a claim for fraud, declaratory judgment, or a constitutional violation, and otherwise had no standing to object to the outcome of the bidding process, we agree that summary disposition was appropriate under MCR 2.116(C)(5) and (8).[3]

We affirm.

WHITBECK, P.J., and K. F. KELLY, J., concurred with MARKEY, J.

---

[3] The trial court's decision appears to be based exclusively on MCR 2.116(C)(5), but this Court may affirm for reasons other than those stated by the court below when there is sufficient support in the record. *Brown v Drake-Willock Int'l, Ltd*, 209 Mich App 136, 143; 530 NW2d 510 (1995).