# STATE OF MICHIGAN

# COURT OF APPEALS

RAMAN VOJNIKA,

        Plaintiff,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellee,

and

PROTECTIVE INSURANCE & FINANCIAL
SERVICES LLC and PROTECTIVE INSURANCE
COMPANY,

        Defendants,

and

NATIONAL INTERSTATE INSURANCE
COMPANY,

        Defendant-Appellant.

UNPUBLISHED
June 22, 2017

No. 331470
Macomb County Circuity Court
LC No. 14-002726-NI

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

In this dispute concerning the priority of insurers under the no-fault act, defendant National Interstate Insurance Company (NIIC) appeals as of right the April 29, 2015 order of the Macomb Circuit Court determining that it was the insurer of highest priority under MCL 500.3114(3)—and therefore liable for plaintiff Raman Vojnika's personal injury protection (PIP) benefits—and granting defendant State Farm Mutual Automobile Insurance Company's (State Farm) motion for summary disposition under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

At the time this dispute arose, Gazmend Tenolli was the president and sole member of G&T Express (G&T), a limited liability company that contracted with RTS Holdings (RTS) to transport commercial loads. As shown in this case, under a contract with RTS, an owner-

-1-

operator may lease to RTS a fleet of up to three tractors, commonly known as "semi-trucks." RTS procures an insurance policy on the trucks and the owner-operator pays RTS weekly for that insurance. RTS then assigns loads to the owner-operator's fleet for transport. The owner-operator of the fleet may transport the loads himself and may also hire other drivers to transport the loads under the contract. The drivers must file some paperwork with RTS; however, the record is unclear as to what this paperwork entails.

For the two years before the accident at issue, plaintiff worked for a different owner-operator under a contract with RTS. Plaintiff then left that job to work for Tenolli. Plaintiff signed some form of an employment agreement with either Tenolli or G&T, and Tenolli agreed to pay plaintiff a set rate for every load he transported. Plaintiff expected to work 5 days per week, driving a truck that Tenolli personally owned. Tenolli was set to pay plaintiff more than $1,300 per week for that service, though plaintiff was responsible for his own health insurance. Plaintiff was required to procure his own personal items, including boots and a flashlight, but Tenolli paid for the truck's gas and maintenance, and for all tolls. For tax purposes, plaintiff reported that he was self-employed; however, plaintiff did not work for anyone but Tenolli.

Plaintiff hauled his first load for Tenolli on March 3, 2014. That day plaintiff picked up the truck and attached trailer from a storage yard and set out to deliver that load to Chicago. Not far into the trip, plaintiff was rear-ended while sitting at a stop light and suffered substantial bodily injury. The contract between plaintiff and Tenolli was lost in the accident.

It is undisputed that RTS insured the truck at issue through a policy with NIIC and that Tenolli, individually, also insured the truck through Protective Insurance Company (Protective). The NIIC policy insured the truck while it was engaged in the transportation of freight, while the Protective policy was a "bobtail policy" that covered the truck at all other times. Plaintiff insured his personal vehicle through State Farm.

At some point in the proceedings, plaintiff sought to recover PIP benefits from each of the insurers. All refused, claiming that another was the insurer of highest priority under the no-fault act, thereby necessitating the trial court's involvement. The parties eventually agreed that Protective was not the insurer of highest priority, and the trial court dismissed Protective from the action with prejudice.[1] Accordingly, the trial court was tasked with determining, by way of cross-motions for summary-disposition pursuant to MCR 2.116(C)(10), whether NIIC or State Farm was the insurer of highest priority.

The trial court found that plaintiff was an employee of RTS, that RTS was a constructive owner of and insured the truck in question, and that plaintiff was injured driving that truck. Based on these facts, the trial court concluded that NIIC was the insurer of highest priority under

---

[1] On appeal, no party disputes that Protective was properly dismissed and, accordingly, that question is not the subject of this appeal.

MCL 500.3114(3). As explained below, although we disagree with some of the trial court's analysis, we affirm that court's determination of priority.[2]

## II. ANALYSIS

This Court reviews "a grant of summary disposition de novo." *Peters v Department of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). MCL 500.3114 sets the insurer priority for PIP benefits under the no-fault act. As relevant here, this section provides that the insurer of an injured person's personal vehicle is the insurer of highest priority for PIP benefits, MCL 500.3114(1), except that "[a]n employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle," MCL 500.3114(3).

The parties agree that State Farm provided insurance coverage on plaintiff's personal vehicle and that State Farm's liability to plaintiff, if any, for his injuries follows from State Farm's status as the insurer of last resort under MCL 500.3114(1). Further, the parties agree that NIIC provided insurance coverage on the semi-truck involved in the underlying accident when that truck was being used to transport goods. Accordingly, NIIC's liability to plaintiff, if any, would stem from its status as the insured of a vehicle furnished to an employee under MCL 500.3114(3).

Per its plain language, MCL 500.3114(3) applies only if the party with the burden of proof presents a factual situation that answers two questions in the affirmative: (1) Is there an employee-employer relationship between the injured plaintiff and the person or entity providing the vehicle in which plaintiff was injured?; and (2) Is the employer a title-holder or otherwise an owner of the furnished vehicle? If the party cannot answer both questions in the affirmative, MCL 500.3114(3) is inapplicable and the insurer of the injured party's personal vehicle is the insurer of highest priority under MCL 500.3114(1).

*Plaintiff Is an Employee of G&T/Tenolli.* The first question this Court must answer is whether plaintiff was employed by any party. If plaintiff was not employed by G&T, Tenolli, or RTS, MCL 500.3114(3) cannot apply to this dispute and State Farm is the insurer of highest priority under MCL 500.3114(1).

We determine whether plaintiff was an "employee" under MCL 500.3114(3) "by applying the 'economic reality test.' " *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 190-191; 14 NW2d 827 (2015) (internal quotation marks and citation omitted). "By this test, factors to be considered include: (a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id*. at 191 (internal

---

[2] "[T]his Court may affirm for reasons other than those stated by the court below when there is sufficient support in the record." *Groves v Dep't of Corrections*, 295 Mich App 1, 13 n 3; 811 NW2d 563 (2011).

quotation marks and citation omitted). "In applying these factors, the totality of the circumstances surrounding the work must be examined, with no single factor controlling." *Meridian Mut Ins Co v Wypij*, 226 Mich App 276, 280; 573 NW2d 320, 323 (1997).

"[W]eight should be given to those factors which will most favorably effectuate the objectives of the statute." *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 568 n 6; 592 NW2d 360 (1999). Although "[a]n independent contractor is not considered an 'employee' for purposes of the no-fault act," *Adanalic*, 309 Mich App at 191, the distinction between employee and independent contractor under the no-fault act is not as restrictive as in other contexts, and "cases interpreting [MCL 500.3114(3)] have given it a broad reading designed to allocate the cost of injuries resulting from the use of business vehicles to the business involved through the premiums it pays for insurance," *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 89; 549 NW2d 834 (1996).

Regarding RTS's potential employment of plaintiff, the record is insufficient to conclude that RTS employed plaintiff. Plaintiff testified that he received his orders from RTS and that he filled out some sort of paperwork with RTS. This paperwork is not in the record and, while RTS's directions to plaintiff may be consistent with an employee-employer relationship where the employer closely supervises the employee's performance of his job duties, these directions may also be consistent with a true independent contractor relationship similar to the situation where an entity hires a postal carrier to transport a package to a specified destination. Without further factual development, there is no way to determine whether plaintiff was an RTS employee, an independent contractor under the direction of RTS, or neither. Accordingly, the trial court erred by finding that plaintiff was an employee of RTS.

We turn next to plaintiff's relationship with G&T and Tenolli. The record is clear that Tenolli disregarded the corporate form when it came to plaintiff's employment. Tenolli was the president and sole owner of G&T, and within the context of hiring plaintiff to haul loads, Tenolli treated G&T and himself as one-and-the-same.

Tenolli testified that there was a written employment agreement with plaintiff, but this document was apparently lost in the accident. Thus, we look to other evidence in the record to determine whether an employment relationship existed between plaintiff and G&T/Tenolli.

Concerning the control that G&T/Tenolli had over plaintiff's duties, plaintiff received his orders for delivery from RTS pursuant to G&T's agreement with RTS. Either RTS or G&T/Tenolli prevented plaintiff from driving the truck unless there was sufficient insurance on the vehicle and the vehicle was properly registered. Plaintiff would have picked up the truck from the same storage yard every day and had to ask permission to transport the load in question on the Monday morning in question, rather than over the weekend. Although there is no evidence regarding who controlled plaintiff's route while plaintiff was making the deliveries in question, that plaintiff's actions were otherwise restricted by G&T/Tenolli favors a finding that plaintiff was an employee of G&T/Tenolli.

Regarding the payment of wages, plaintiff testified that he had an agreement with G&T/Tenolli and that he planned to work five days per week hauling loads. G&T/Tenolli was set to pay plaintiff $1,300 or more per week under this arrangement, although plaintiff was

responsible for his own health insurance. That there is no evidence that plaintiff worked for any other entity is sufficient for this Court to conclude that this factor weighs in favor of the finding of an employment relationship, especially in light of the implicit suggestion that this income made up the majority, if not entirety, of plaintiff's income given the profession at issue and the fact that plaintiff stood to make over $60,000 per year under this arrangement.

Concerning the right to hire, fire, and discipline, plaintiff appears to have had no authority to contract out his work, hire labor, or deviate from the instructions given to him by G&T/Tenolli and RTS. Accordingly, this factor favors the finding of an employment relationship.

Finally, regarding the performance of the worker's duties as an integral part of the employer's business, Tenolli testified that he owned three trucks and that plaintiff was the only employee at the time of the accident. Plaintiff testified that he planned to work five days per week for G&T/Tenolli. There is no evidence in the record to suggest that G&T/Tenolli were involved in any other agreements outside of the one agreement with RTS, and the sum of plaintiff's intended work appears to be aimed at fulfilling the obligations of that agreement. Although plaintiff provided his own boots, flashlight, and other personal items, G&T/Tenolli covered the major expenses of plaintiff's work, including fuel and maintenance costs for the truck at issue. Again, this factor favors a finding of an employment relationship.

Accordingly, because every factor of the economic reality test weighs in favor of a finding of an employment relationship, we conclude that G&T/Tenolli employed plaintiff.[3]

*G&T Is an Owner of the Truck.* Turning to the second issue, the record confirms that Tenolli, individually, was the titleholder—and therefore an owner—of the truck. MCL 500.3101(2)(k)(*iii*). Under Michigan's no-fault regime, however, a motor vehicle can have a title owner as well as a "constructive owner." Under MCL 500.3101(2)(k)(*i*), a constructive owner is any "person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." A constructive owner may be an individual or a business entity. See *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 31-32; 800 NW2d 93 (2010).

Regarding G&T's potential ownership of the truck, this Court has previously determined that "having the use" of a motor vehicle, as the term is used in MCL 500.3101(2)(k)(*i*), "means using the vehicle in ways that comport with concepts of ownership," *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999). The *Ardt* Court noted that "ownership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or

---

[3] Even if we were to treat Tenolli and G&T separately for purposes of whether plaintiff was an employee or independent contractor, the result would be the same. It is clear that, based on the application of the economic realities test, plaintiff was an employee, and whether Tenolli or G&T is considered the employer is of no moment here because both Tenolli and G&T are "owners" of the truck under the no-fault act, as explained below.

with the permission of another." *Id*. at 691. Some factors that courts of this jurisdiction have considered when determining whether an entity's use of a vehicle is sufficient to establish constructive ownership of that vehicle include: (1) whether the purported owner's use was regular or periodic, *id.* at 691; (2) whether the purported owner took physical possession of the vehicle pursuant to a purchase, lease, or other agreement, *Twichel v MIC Gen Ins Co*, 469 Mich 524, 531; 676 NW2d 616 (2004); (3) whether possession of the vehicle was exclusive or shared, *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339, 355-356; 282 Mich App 801; 764 NW2d 304 (2009); *Kessel v Rahn*, 244 Mich App 353, 357-358; 624 NW2d 220 (2001); (4) whether the purported owner's use was permissive, *Roberts*, 282 Mich App at 356; *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490, 491-492; 775 NW2d 151 (2009); (5) whether the purported owner performed maintenance on the vehicle and paid to fuel the vehicle, *Detroit Med Ctr*, 284 Mich App at 492; *Kessel*, 244 Mich App at 357-358; (6) where the vehicle was regularly parked, *Chop v Zielinski*, 244 Mich App 677, 681; 624 NW2d 539 (2001); and (7) whether the purported owner thought that it had a legal right to the vehicle, *Chop*, 244 Mich App at 681-682.

Tenolli was the president of G&T and G&T had a trucking agreement with RTS. The truck at issue was used exclusively to fulfill the obligations of that agreement under the direction of Tenolli. The vehicle was stored in a storeyard that provided easy access for Tenolli and plaintiff to dispatch deliveries for RTS. For its part, RTS acknowledged the truck's importance to G&T's agreement with RTS by helping to procure insurance on the truck, and not to be lost in this analysis is that the policy covers the truck only when it was involved in the transport of goods under G&T's agreement with RTS. There is no evidence in the record that plaintiff, Tenolli, or anyone else used the vehicle for personal use.

Thus the record shows that the truck at issue was used and maintained to perform the obligations of G&T's agreement with RTS, under the direction of G&T's president. We conclude that, therefore, G&T's use of the truck was sufficiently proprietary that G&T was a constructive owner of the truck under the no-fault act.

Because G&T/Tenolli employed plaintiff and both G&T and Tenolli were statutory owners of the truck that plaintiff was driving at the time of the accident, MCL 500.3114(3) applies to this dispute, and the insurer of the truck is the insurer of highest priority under the no-fault act.

*RTS Properly Insured the Truck Under the No-fault act.* The parties do not dispute that RTS held an insurance policy covering the truck at the time of the accident through NIIC. According to NIIC, that policy covers the truck while the truck is engaged in "trucking," trucking being the act of transporting freight. There is no dispute that a trailer of parts was attached to the truck at the time of the accident and that plaintiff was transporting those parts to Chicago. Accordingly, NIIC's policy was triggered at the time of the accident. The parties do not dispute that NIIC's policy was valid and therefore NIIC, as the insurer of the "furnished vehicle," is the insurer of highest priority under MCL 500.3114(3).

Affirmed.

/s/ Michael J. Riordan
/s/ Brock A. Swartzle