*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JULIE ATTY,

        Plaintiff-Appellee,

and

SEPEHR FARIDIAN,

        Plaintiff,

and

WOOD KULL HERSCHFUS OBEE & KULL, PC,

        Intervening Plaintiff-Appellee,

v

ANTHONY LEVENSON, ASAF SAGI, and ZEEV SAGI,

        Defendants,

and

DAVID FINDLING, Receiver,

        Appellant.

UNPUBLISHED
February 10, 2022

No. 350689
Wayne Circuit Court
LC No. 17-002810-CZ

Before: K.F. KELLY, P.J., and STEPHENS and CAMERON, JJ.

PER CURIAM.

In this action by judgment creditors to collect from a judgment debtor, David Findling, a court-appointed receiver, appeals the trial court's August 29, 2019 order. The order disbursed receivership proceeds from the sale of real property, but denied Findling his requested compensation. We affirm.

-1-

## I. BACKGROUND

This case stems from an April 22, 2016 judgment of $80,134.88 that was entered in favor of plaintiff, Julie Atty, against defendant Zeev Sagi ("Zeev"). On May 23, 2016, Zeev quitclaimed his interest in residential property in Garden City, Michigan ("the property") to his son, defendant Asaf Sagi ("Asaf").[1] On February 10, 2017, Atty filed an action against Asaf and Zeev, alleging that the May 2016 conveyance to Asaf was a fraudulent conveyance. Atty requested that the conveyance be set aside. Atty also filed a notice of lis pendens with the Wayne County Register of Deeds on February 14, 2017, noting her judgment interest in the property and the pending lawsuit against Asaf and Zeev. On March 8, 2017, Asaf quitclaimed his interest in the property to defendant Anthony Levenson ("Anthony") and to Marina Levenson ("Marina"). An amended complaint was filed, naming Anthony as an additional defendant. The amended complaint alleged that the March 2017 conveyance was voidable because Anthony had notice of Atty's claim against the property by the recorded notice of lis pendens. Atty also alleged that she was entitled to a judgment of foreclosure on the property to satisfy the judgment against Zeev.

Atty later moved for summary disposition, seeking to have the conveyances set aside. In response, Anthony, Asaf, and Zeev argued in part that, although the conveyance from Zeev to Asaf appeared to be fraudulent on its face, Zeev had only been the "nominal" owner of the property and was acting for Asaf who lived in another country. Anthony, Asaf, and Zeev argued that Zeev had developed cancer in 2016 and, faced with a potentially fatal disease, transferred the property to Asaf so that there would be no confusion about the ownership of the property amongst Zeev's children. The trial court granted summary disposition in favor of Atty, holding that the transfer from Zeev to Asaf was fraudulent and violated MCL 566.34. The trial court also set aside the conveyance from Asaf to Anthony. After it was discovered that Marina was "inadvertently left off the pleading," the trial court entered an order, which set aside Asaf's transfer of the property to Marina. Atty moved for appointment of a receiver. The trial court granted the motion and ultimately appointed Findling as a receiver to sell the property.

On April 19, 2018, Zion Hen moved to intervene in the action, contending that he and Asaf, who acted through Zeev, had purchased the property under a partnership agreement. Hen argued that he had an ownership interest in the property and, therefore, he was entitled to a portion of the proceeds from its sale. Findling filed a report on June 21, 2018, informing the trial court that the property did not have clear title and could not be marketed until Hen's interest in the property was addressed. Findling believed that the parties and their attorneys were attempting to resolve Hen's claim amongst themselves.[2] The trial court ultimately denied Hen's motion to intervene on June 26, 2018.

---

[1] Zeev obtained his interest in the property pursuant to a March 16, 2011 covenant deed from Federal Home Loan Mortgage Corporation to Zeev and Zion Hen.

[2] Atty filed a separate action against Hen. On October 14, 2018, the trial court granted Atty's motion to quiet title and sell the home. The order provided that title to the property was granted to Atty and held that the property "shall be in the name of Julie Atty."

-2-

Findling later received an offer from a buyer to purchase the property for $58,500, and moved to confirm the sale of the property. The trial court confirmed the sale on March 25, 2019. Thereafter, the law firm Wood Kull Herschfus Obee & Kull, PC ("WKHOK") moved to intervene in the action, arguing that it had obtained a judgment against Zeev for $55,420.47 on November 22, 2017. According to WKHOK, Zeev had failed to disclose his interest in the property at a creditor's exam, but that WKHOK had later learned of Zeev's interest in the property by chance. The trial court granted WKHOK's motion to intervene.

Findling submitted his final report on June 21, 2019. The final report indicated that the total amount of funds in the trust account was $45,448.55. From that, Findling requested fees in the amount of $17,790.50 and costs in the amount of $2,952.33. WKHOK objected to Findling's final report, arguing that Findling was appointed for the sole purpose of selling the property and had retained a real estate broker who was paid a commission at closing. WKHOK also argued that many of the services listed by Findling were beyond the scope of the orders of appointment, were duplicative, or could have been performed by a paralegal. WKHOK additionally argued that the hourly rate charged by Findling was excessive. WKHOK submitted a detailed, line-by-line analysis of Findling's charges.

Following a hearing, the trial court issued an opinion and order, in which it found that Findling's requested rate of $290 an hour was "not reasonable." The trial court determined that $195 an hour was "a reasonable rate for the services[.]" In addition, the trial court reduced the number of hours for which Findling requested compensation from 72.9 hours to 50.7 hours "to accommodate tasks that could have been completed by [a] paralegal, tasks that were duplicative, or tasks that were outside [Findling's] purpose, excessive time, and non-charged time." Accordingly, the trial court awarded Findling fees of $10,302.50 and approved Findling's requested costs of $2,952.33. Thus, of the $45,448.55 in the trust account, the trial court approved distribution of $13,254.83 to Findling for fees and costs. The trial court distributed the remaining funds by awarding $21,093.72 to Atty and her attorney and $11,100 to WKHOK. This appeal followed.

## II. ANALYSIS

### A. DISTRIBUTION

Findling first argues that the trial court erred by failing to consider that Zeev owned only 50 percent of the property at the time of the sale, with Atty being the owner of the other 50 percent. Because of Atty's ownership interest, Findling contends that the entire sale proceeds were not available for distribution to Atty and WKHOK. Findling also argues that the trial court erred when it failed to consider the amount of Atty and WKHOK's outstanding judgments against Zeev when awarding them proceeds from the sale of the property. We conclude that Findling is not the proper party to raise these arguments.

"Whether a party has standing is a question of law subject to review de novo." *Groves v Dept of Corr*, 295 Mich App 1, 4; 811 NW2d 563 (2011). In *League of Women Voters of Mich v Secretary of State (League I)*, 331 Mich App 156, 168; 952 NW2d 491 (2020), vacated in part on

other grounds by *League of Women Voters of Michigan v Secretary of State*, 506 Mich 561; 957 NW2d 731 (2020), this Court observed as follows:

> [T]his Court has jurisdiction over appeals by right "filed by an aggrieved party." MCR 7.203. *Black's Law Dictionary* (11th ed) defines "aggrieved party" as "a party entitled to a remedy; esp. a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Federated Ins Co v Oakland Co Rd Comm'n*, 475 Mich 286, 291; 715 NW2d 846 (2006).

> \* \* \*

> " 'Standing is the legal term used to denote the existence of a party's interest in the outcome of the litigation; an interest that will assure sincere and vigorous advocacy.' " *Allstate Ins Co v Hayes*, 442 Mich 56, 68; 499 NW2d 743 (1993) (citations omitted). When standing is at issue in a case, "the question is whether the person whose standing is challenged is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Id*. at 168-169 (quotation marks and citations omitted).

In this case, Findling does not represent Atty or WKHOK.[3] Instead, Findling is a court-appointed receiver. Importantly, "[a] court-appointed receiver is a ministerial officer of the court, charged with the task of preserving property and assets during ongoing litigation." *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 528; 730 NW2d 481 (2007), mod in part on other grounds, 480 Mich 910 (2007). "A receiver is not appointed as the agent of, or for the benefit of, one party or the other; rather he or she is appointed to protect and benefit both parties equally." *Id*. "[A]s an officer of the court, a receiver should remain unbiased and impartial. The position of receiver requires . . . the strictest impartiality[.]" *Id*. (quotation marks and citations omitted).

Thus, because Findling is charged with being neutral and does not represent the interests of the individual creditors, Findling does not have an interest in how the proceeds are distributed to Atty or WKHOK. Findling's only interest in the trial court's order is the amount of his own compensation, which we address later in this opinion. Thus, we conclude that Findling lacks standing to challenge whether the trial court's order distributing the remaining proceeds accurately reflects Zeev's interest in the property or Atty or WKHOK's equitable or proportionate shares of the remaining proceeds.

---

[3] Regardless of whether the trial court's allocation of the proceeds between the two judgment creditors was accurate or equitable, Atty does not raise objections to the trial court's order. Similarly, WKHOK moved the trial court to allocate the balance "as the court deem[ed] appropriate." WKHOK has not challenged the trial court's distribution of the proceeds as between it and Atty on appeal.

## B. FINDLING'S COMPENSATION

Next, Findling argues that the trial court erred by reducing his requested compensation rate and number of invoiced hours. We disagree.

A receiver's right to compensation for services and expenses is equitable in nature. *Fisk v Fisk*, 333 Mich 513, 518; 53 NW2d 356 (1952). This Court reviews equitable actions de novo. *Mich Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992). "A court acting in equity looks at the whole situation and grants or withholds relief as good conscience dictates." *Id.* (quotation marks and citation omitted). The amount of compensation awarded to a receiver is within the trial court's discretion. *Fisk*, 333 Mich at 517; *Band v Livonia Assoc*, 176 Mich App 95, 110-111; 439 NW2d 285 (1989). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Although the receiver's compensation is within the trial court's discretion, it must not be excessive. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 280-281; 761 NW2d 761 (2008).

In this case, the trial court's January 2018 and February 2019 appointment orders do not specifically provide for the amount or rate of Findling's compensation. Rather, the orders provide that Findling "shall receive reasonable compensation for his services" and "shall be entitled to reimbursement for reasonable out-of-pocket expenses related to the performance of his duties[.]" In addition, the orders state that Findling's compensation is "subject to [the trial court's] final review and approval" and that "approved compensation shall be an administrative claim against the Receivership Estate . . . and entitled to priority over any and all secured, priority and unsecured claims." These provisions are consistent with Michigan law.

"Receivers have a right to compensation for their services and expenses[.]" *Cohen v Cohen*, 125 Mich App 206, 215; 335 NW2d 661 (1983). "[S]uch right is a strong equity, analogous to an obligation founded upon an implied contract, and is not dependent upon the mere arbitrary discretion of the court, if the appointment of the receiver was regular and his conduct has been free from exception." *Fisk*, 333 Mich at 518 (quotation marks and citation omitted). The compensation to which receivers are entitled is "*reasonable* compensation for services rendered to the receivership estate." MCR 2.622(F)(1) (emphasis added). Ultimately, the amount of compensation to be awarded to a receiver is within the trial court's discretion. *Band*, 176 Mich App at 110-111. "The [trial] court's determination concerning the propriety and reasonableness of a receiver's expenses is treated as presumptively correct because the [trial] court has far better means of knowing what is just and reasonable than an appellate court can have." *Ypsilanti Charter Twp*, 281 Mich App at 275 (quotation marks and citation omitted).

Findling, who is an attorney, presented an itemized list that detailed 72.9 hours of professional services in his final report. Of these hours, 3.5 hours were billed at a rate of $85 per hour and were attributed to "LR," a legal secretary; 0.3 hours were billed at $310 per hour and were attributed to "DMF"; and the remainder were billed at $290 per hour and were attributed to

"EE," Findling's attorney who also worked in his law firm.[4] The total amount billed for professional services was $17,790.50. Additionally, Findling requested costs of $2,952.33, for a total requested amount of $20,742.83.

WKHOK filed objections to Findling's report, arguing that Findling was appointed for the sole purpose of selling the property and that Findling retained a real estate broker who was paid a commission. WKHOK also argued that many of the services listed in Findling's invoice were duplicative or could have been performed by a paralegal and that the $290 per hour rate charged by Findling's attorney was excessive. WKHOK submitted an annotated copy of Finding's invoice with its objections, marking the items that it believed were duplicative, excessive, or should not have been billed at an attorney's rate. The rate suggested by WKHOK for most services was $195 per hour, which was the rate charged by an established real estate professional known to WKHOK whose firm was often appointed as a receiver. WKHOK also suggested reducing Findling's hours from 72.9 to 39.1. In its objections to the final report, WKHOK recommended that $9,808.33 be distributed to Findling for his compensation and costs.

The trial court concluded that the $290 per hour rate was "not reasonable" and that an examination of the 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report established that $195 per hour was "a reasonable rate for the services[.]" Therefore, the trial court reduced Findling's requested rate to no more than $195 an hour. In addition, the trial court reduced the hours for which Findling would be paid from the requested 72.9 hours to 50.7 hours "to accommodate tasks that could have been completed by paralegal, tasks that were duplicative, or tasks that were outside [of Findling's] purpose, excessive time, and non-charged time."

On appeal, Findling argues that the trial court erred because the field of receivership is not listed as a field of practice in the 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report. Findling also notes that the rate of $195 an hour is not otherwise mentioned in that report. While we agree that the report does not list receivership as a specialty or list a rate of $195 an hour for any relevant specialty, the trial court's order indicates only that the court examined the report, was guided by it, and concluded that the $195 per hour rate suggested by WKHOK was a reasonable rate. We conclude that the trial court's selection of this rate was not an abuse of discretion. Receivership is not, strictly speaking, the practice of law, and nonlegal professionals are frequently appointed by courts to serve as receivers. Therefore, the trial court did not abuse its discretion by determining that the rate charged in this case was not reasonable for receivership compensation, particularly where the receivership estate is not large, the receiver's duties are not particularly complex, and the receiver's primary duty is to sell a piece of real estate. In the present case, Findling requested $17,790.50 for professional services, in addition to $2,952.33 in costs, from a receivership estate of $45,448.55. The amount of fees requested by Findling would have left less than $25,000 to partially satisfy Atty and WKHOK.

Findling also argues that the trial court abused its discretion by reducing the number of hours invoiced from 72.9 to 50.7. We disagree. The trial court found that some of Findling's

---

[4] At the motion hearing, Findling's attorney confirmed that $290 an hour was her usual billing rate and that she had completed all of the invoiced items, except those designated as "LR" or "DMF."

services were excessive or duplicative and that some of the services were outside the scope of Findling's duties. The trial court did not abuse its discretion by making these reductions. Indeed, the litigation surrounding Hen's unsuccessful attempt to intervene as a plaintiff and WKHOK's successful intervention, for example, concerned disputes between the judgment creditors. Findling had no role in those disputes. As already stated, "[a] receiver is not appointed as the agent of, or for the benefit of, one party or the other; rather he or she is appointed to protect and benefit both parties equally." *Ypsilanti Fire Marshal*, 273 Mich App at 528. In *Kurrasch v Kunze Realty Co*, 296 Mich 122, 123; 295 NW 583 (1941), the receiver appealed an order disallowing some of the receiver's charged items. The Supreme Court rejected the receiver's argument, stating:

> It would be of no avail to discuss the multitude of items in controversy. The question of whether such charges were proper and reasonable was within the discretion of the court passing upon the receiver's account. Whether the accounts for expenditures are padded, or truthful, is for the determination of the court. Like all questions of costs in courts of equity, allowances of this kind are largely discretionary, and the action of the court below is treated as presumptively correct, since it has far better means of knowing what is just and reasonable than an appellate court can have. We find no evidence to justify substituting our judgment on the controverted issues for that of the trial court. [*Id*. at 124 (citation omitted).]

Guided by this analysis, we conclude that the trial court did not abuse its discretion when it reduced Findling's hours.

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Thomas C. Cameron

-7-