KESSEL v RAHN

Docket No. 220013. Submitted January 9, 2001, at Lansing. Decided January 23, 2001, at 9:00 A.M.

Rose Marie Kessel brought an action in the Bay Circuit Court against Kenneth L. Rahn, Jr., seeking damages for noneconomic loss arising out of an automobile accident that occurred when a vehicle driven by the plaintiff was struck from behind by a vehicle operated by the defendant. The vehicle the plaintiff was driving was titled in the name of her mother and did not have the insurance coverage required by law. The court, Kenneth W. Schmidt, J., granted summary disposition in favor of the defendant, finding that the vehicle operated by the plaintiff was "her own vehicle" for purposes of MCL 500.3135(2)(c); MSA 24.13135(2)(c), which precludes recovery by a person who was operating "his or her own vehicle when the injury occurred" while not having in effect for the vehicle the mandatory insurance required by MCL 500.3101; MSA 24.13101. The plaintiff appealed.

The Court of Appeals *held*:

1. The court properly relied on the definition of "owner" in MCL 500.3101(2)(g); MSA 24.13101(2)(g) to define "own vehicle" in subsection 3135(2)(c).

2. The court properly found that the plaintiff had a "regular pattern of unsupervised usage" to establish a sufficient proprietary or possessory use of the vehicle for more than thirty days, thus coming within the definition of "owner" under § 3101. The plaintiff was driving "her own vehicle" at the time of the accident and is precluded under § 3135 from maintaining an action for noneconomic damages because she failed to maintain the required insurance.

Affirmed.

1. INSURANCE — AUTOMOBILES — NO-FAULT — WORDS AND PHRASES — OWNER — OWN VEHICLE.

A trial court may rely on the definition of "owner" in subsection 3101(2)(g) of the no-fault act to aid in defining the undefined term "own vehicle" in subsection 3135(2)(c) of the act (MCL 500.3101[2][g], 500.3135[2][c]; MSA 24.13101[2][g], 24.13135[2][c]).

2. Insurance — Automobiles — No-Fault — Words and Phrases — Owner.
    Subsection 3101(2)(g)(i) of the no-fault act defines an "owner" of a
        motor vehicle to include a "person renting a motor vehicle or hav-
        ing the use thereof, under a lease or otherwise, for a period that is
        greater than 30 days"; the phrase "having the use" means using the
        vehicle in ways that comport with concepts of ownership and does
        not equate ownership with any and all uses for thirty days, but
        rather equates ownership with having the use of a vehicle for that
        period; ownership follows from proprietary or possessory usage, as
        opposed to merely incidental usage under the direction or with the
        permission     of     another     (MCL     500.3101[2][g][i];     MSA
        24.13101[2][g][i]).

*Wildeboer & Klida, LLP* (by *John L. Wildeboer*), for
the plaintiff.

*Smith, Martin, Powers & Knier, P.C.* (by *Jonathan
C. Martin*), for the defendant.

Before: Sawyer, P.J., and Murphy and Fitzgerald, JJ.

Sawyer, P.J. The trial court granted summary dispo-
sition in favor of defendant on plaintiff's claim for
damages arising out of an automobile accident. Plain-
tiff appeals, and we affirm.

Plaintiff claims to have suffered injury when the
vehicle she was driving was struck in the rear by a
vehicle operated by defendant. The vehicle plaintiff
was driving was titled in the name of her mother and
did not have the insurance coverage required by law.
Plaintiff brought the instant action against defendant
seeking damages for noneconomic loss. The trial
court granted defendant's motion for summary dispo-
sition under the provisions of MCL 500.3135(2)(c);
MSA 24.13135(2)(c), which precludes recovery by a
person who violated the mandatory insurance
requirement:

> Damages shall not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security required by section 3101 [MCL 500.3101; MSA 24.13101] at the time the injury occurred.

In dispute in the case is whether the vehicle operated by plaintiff may be regarded as "his or her own vehicle" inasmuch as it was titled in her mother's name at the time of the accident. We agree with the trial court that it is, in fact, plaintiff's "own vehicle" and, therefore, the provisions of subsection 3135(2)(c) apply.

Subsection 3135(2)(c) does not define the term "own vehicle." The trial court relied on the provisions of subsection 3101(2)(g) and its definition of "owner." MCL 500.3101(2)(g); MSA 24.13101(2)(g). We find this to be a reasonable approach inasmuch as the concepts of "owner" and "own vehicle" are similar, it is § 3101 that imposes the mandatory insurance requirement, and it is a definition that is contained within the same statutory scheme as the provision being interpreted.[1]

This Court, in *Ardt v Titan Ins Co*, 233 Mich App 685; 593 NW2d 215 (1999), considered the definition of "owner" under § 3101 in the context of the provision in MCL 500.3113(b); MSA 24.13113(b) that precludes the owner of an uninsured vehicle from collecting personal protection insurance benefits for

---

[1] Plaintiff suggests that we should rely on the definition of "owner" contained within the Michigan Vehicle Code. MCL 257.37; MSA 9.1837. While it is not wholly illogical to do so, and we might have been inclined to examine that definition if none was provided by the Insurance Code, we think it better to consider a definition contained within the Insurance Code than within the Michigan Vehicle Code when interpreting the Insurance Code. Accordingly, we reject those arguments advanced by plaintiff that are dependent on the definition within the Michigan Vehicle Code.

bodily injury resulting from an accident involving the uninsured vehicle. In *Ardt*, as in the case at bar, the uninsured vehicle was being operated by the child of the titled owner. In *Ardt*, we concluded that the operator of the vehicle could be deemed an "owner" under § 3101 if the operator had a proprietary or possessory use of the vehicle (rather than merely incidental use) for more than thirty days.[2] *Ardt, supra* at 690-691.

Having concluded that the trial court properly relied on the definition of "owner" under § 3101 and properly relied on the *Ardt* opinion, we turn to the question whether plaintiff would be regarded as an "owner" under § 3101. Subsection 3101(2)(g) provides in pertinent part as follows:

> "Owner" means any of the following:
>
> (i) A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.

In *Ardt, supra* at 690-691, we opined as follows:

> The statutory provisions at issue operate to prevent users of motor vehicles from obtaining the benefits of personal protection insurance without carrying their own insurance through the expedient of keeping title to their vehicles in the names of family members. Because we infer from these provisions that they were enacted in furtherance of the sound public policy imperative that users of motor vehicles maintain appropriate insurance for themselves as indicated by their actual patterns of usage, we hold that "having the use" of a motor vehicle for purposes of defining "owner," MCL 500.3101(2)(g)(i); MSA 24.13101(2)(g)(i), means using

---

[2] This Court remanded the matter to the trial court, concluding that there existed a genuine issue of material fact regarding whether the operator did, in fact, have use of the vehicle for the requisite period. *Ardt, supra* at 691.

the vehicle in ways that comport with concepts of ownership. The provision does not equate ownership with any and all uses for thirty days, but rather equates ownership with "having the use" of a vehicle for that period. Further, we observe that the phrase "having the use thereof" appears in tandem with references to renting or leasing. These indications imply that ownership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another. Under this reading of the statutory definition, the spotty and exceptional pattern of Robert's usage to which Rita attested may not be sufficient to render Robert an owner of the truck. However, the regular pattern of unsupervised usage to which the defense witness attested may well support a finding that Robert was an owner for purposes of the statute. Accordingly, there remains a genuine issue of material fact for resolution at trial, rendering summary disposition with regard to this issue inappropriate.

Turning to the case at bar, plaintiff testified during her deposition that, at the time of the accident, she had been using the vehicle for over a year. She further testified that she was not aware of her mother, the titled owner of the vehicle, using the vehicle during that period. Plaintiff also indicated that she "pretty much" had exclusive use of the vehicle during that time, using the vehicle to go to work, transport her kids, and for any other use that she needed it for. Additionally, plaintiff's mother testified during her deposition that she purchased the vehicle with the intent that plaintiff was to use it, that plaintiff used the vehicle on a daily basis, and that the vehicle was kept at plaintiff's home. Plaintiff's mother further acknowledged that she (the mother) had not driven the vehicle at any time while it was in plaintiff's possession. Further, it was plaintiff's obligation to pay for

the gas, repairs, and insurance on the vehicle. In fact, plaintiff's mother stated in an affidavit that her permission to plaintiff to use the vehicle was conditioned on plaintiff's maintaining insurance on the vehicle and that the mother would have revoked permission to use the vehicle had she known that plaintiff had not maintained insurance coverage.

We agree with the trial court that there is no genuine issue of material fact that plaintiff had a "regular pattern of unsupervised usage," *id.* at 691, to establish a sufficient proprietary or possessory use of the vehicle for more than thirty days, thus coming within the definition of "owner" under § 3101.[3] By extension, we conclude that plaintiff was driving "her own vehicle" at the time of the accident and, therefore, is precluded under § 3135 from maintaining an action for noneconomic damages because of her failure to maintain the required insurance.

Plaintiff suggests that we should not extend the principle in *Ardt* to the case at bar because *Ardt* dealt with a policy that drivers maintain insurance for themselves, while the case at bar deals with a person injured (allegedly) by the negligence of another. While the distinction between collecting personal protection benefits (the case in *Ardt*) and collecting non-

---

[3] The trial court aptly summarized this principle in its opinion as follows:

"Having the use" of a motor vehicle means using the vehicle in ways that comport with concepts of ownership, and will generally involve proprietary or possessory usage. On the other hand, *merely incidental usage* under the direction or with the permission of another, even over a period greater than 30 days, is not consistent with the concept of "ownership," and does not properly result in a person being considered an "owner" under the statutory definition. [Emphasis in original.]

economic damages (as is the case here) might well provide a basis for applying different rules, the Legislature has answered that question. In enacting subsection 3135(2)(c), the Legislature has clearly and unambiguously provided that the failure to maintain required insurance precludes recovery for noneconomic damages. Therefore, the Legislature has itself indicated that the same policy considerations in *Ardt* apply to the case at bar.

Further, we disagree with plaintiff's arguments that the term "his or her own vehicle" must be given a restrictive interpretation and that the *Ardt* Court's expansive definition of "owner" is unworkably broad when stretched to include a mere "user." We disagree. First, as detailed in *Ardt*, subsection 3101(2)(g) explicitly extends the concept of "owner" to mere users under certain circumstances. Further, as mentioned in *Ardt*, if the statute did not so extend the concept of "owner," it would be possible to easily avoid the penalties at issue in *Ardt* and the case at bar for failure to maintain insurance: title the vehicle in someone else's name.

Imposing the responsibilities of an owner to maintain insurance on a person who has proprietary or possessory use of an automobile for more than thirty days clearly promotes the objectives of the mandatory insurance provisions, while not imposing unreasonable burdens on the casual user. That is, the Legislature obviously believed it unreasonable to require someone to verify insurance coverage, at the risk of losing personal protection benefits and the right to sue a negligent driver for noneconomic damages, before driving a friend's car to the store and back. However, the Legislature believes it reasonable

to require someone to ensure insurance coverage if they have use of a vehicle for more than thirty days in ways that comport with ownership. *Ardt, supra* at 690. Indeed, in the case at bar, according to the affidavit of plaintiff's mother, plaintiff had the responsibility of insuring the vehicle.[4]

Plaintiff also suggests that the references to "renting" and a "lease" in subsection 3101(2)(g) limits the meaning of "or having the use thereof" to commercial transactions. We disagree. We believe that the use of the phrase suggests a Legislative intent to clearly go beyond commercial settings rather than to limit itself to commercial settings only. Similarly, we are not persuaded by the legislative analysis provided by plaintiff. While that analysis does support the proposition that the Legislature's primary focus was on the automobile leasing situation, it does not clearly establish that that was the Legislature's sole concern. Indeed, it may well be read as supporting defendant's position because it refers to imposing the insurance obligations on the drivers that "have complete custody of and control over the vehicles," Senate Fiscal Agency Bill Analysis, HB 4685, 4721, April 14, 1988, which certainly describes plaintiff in the case at bar.

Affirmed. Defendant may tax costs.

---

[4] Plaintiff's deposition also suggests this to be the case. In response to a question why she had not purchased insurance, plaintiff replied, "Lack of funds" rather than that it was not her obligation to do so.