# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW SHELSON,

Plaintiff,

v

SECURA INSURANCE COMPANY,

Defendant-Appellant,

and

GREAT WEST CASUALTY COMPANY,

Defendant-Appellee.

UNPUBLISHED
May 19, 2015

No. 318762
Sanilac Circuit Court
LC No. 12-034648-NF

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Plaintiff was injured in a motor-vehicle accident and sued defendants Secura Insurance Company and Great West Casualty Company for no-fault benefits. Secura and Great West disputed which company was responsible to pay plaintiff's claim. The trial court granted plaintiff's motion for summary disposition, holding that Secura was responsible. Secura applied for leave to appeal in this Court; this Court denied the application. *Shelson v Secura Ins Co*, unpublished order of the Court of Appeals, entered September 9, 2013 (Docket No. 314322). On the day that trial was set to commence, the parties settled the case, with Secura preserving the right to appeal the trial court's determination that it rather than Great West was responsible to pay plaintiff's claim. The trial court thereafter entered an order dismissing the case with prejudice. We now affirm the trial court's determination that plaintiff did not own the vehicle at issue.

Plaintiff owned two personal vehicles insured by Secura. He worked as a driver for Sam Forrest & Sons, a trucking company, which was owned by Sam Forrest. Plaintiff testified that he was an independent contractor, not an employee of Sam Forrest & Sons, although he worked exclusively for the company. Plaintiff would find his own trucking jobs and Forrest would provide a semi truck for the job. Plaintiff would receive 25 percent of the gross; the company received the remaining 75 percent.

-1-

There was no particular truck that plaintiff drove at all times. As he explained, "I'd drive one for a little while and then I'd get into another one, whichever one was available. I mean it was months at a time—stretches in the same vehicle." Plaintiff would take a truck to his house "[e]very once in a while," but usually he would return the trucks to Forrest to service them. Plaintiff testified that Forrest paid for gas and major repairs to the trucks, while he paid for some minor repairs and oil while he was on the road.

For three or four months before the accident that gave rise to the present case, plaintiff had been driving a Freightliner FLD-120, which was insured by Great West. The Freightliner was registered in Forrest's name and plaintiff was not on the title to the vehicle. Plaintiff testified that he could not use the Freightliner for personal errands.

After the accident, plaintiff sued Secura and Great West for personal injury protection (PIP) benefits. Plaintiff thereafter moved for summary disposition, arguing that Secura was responsible to pay his no-fault benefits. In response, Secura moved for summary disposition, arguing that because plaintiff owned the Freightliner and was self-employed, Great West rather than Secura was responsible to pay no-fault benefits.

The trial court ruled that plaintiff did not own the Freightliner, explaining:

> [T]he owner of the truck is the one that controls who uses the truck from day to day. . . . Plaintiff has no exclusive use of the truck, no unfettered use of the truck, doesn't take it home with him, so I think . . . he is not the owner . . . under the statute . . . .

On appeal, Secura argues only that the trial court erred by determining that plaintiff did not own the Freightliner. We review de novo a trial court's decision on a motion for summary disposition. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 443; 761 NW2d 846 (2008). We review de novo questions of statutory interpretation. *Hoffman v Boonsiri*, 290 Mich App 34, 39; 801 NW2d 385 (2010).

Under the no-fault act, MCL 500.3101 *et seq.*, the general rule is that a person who is injured in a motor-vehicle accident recovers benefits from his own insurer. MCL 500.3114(1); *Frierson v West American Ins Co*, 261 Mich App 732, 735; 683 NW2d 695 (2004). An exception to the general rule is found at MCL 500.3114(3), which states:

> An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

In *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 89; 549 NW2d 834 (1996), our Supreme Court held that under MCL 500.3114(3), a self-employed person who is injured in a motor-vehicle accident while operating a vehicle owned by his business recovers benefits from the insurer of the business vehicle, not the insurer of his personal vehicles. See also *Vitale v Auto Club Ins Ass'n*, 233 Mich App 539, 542; 593 NW2d 187 (1999).

In the present case, the trial court held that plaintiff did not own the Freightliner. Secura argues that this holding was erroneous.

Under MCL 500.3101(2)(h), an "owner" is defined as:

> (*i*) A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.

> (*ii*) A person who holds the legal title to a vehicle, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.

> (*iii*) A person who has the immediate right of possession of a motor vehicle under an installment sale contract.

Secura argues that because plaintiff used the Freightliner for greater than 30 days, he should be considered an "owner" under MCL 500.3101(2)(h)(*i*).

In *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999), this Court was charged with deciding "whether any degree of usage for more than thirty days satisfies the statutory definition of 'owner,' . . . or whether the definition requires something more." The Court held "that 'having the use' of a motor vehicle for purposes of defining 'owner' . . . means using the vehicle in ways that comport with concepts of ownership." *Id*. The Court explained that MCL 500.3101(2)(h)(*i*) "does not equate ownership with any and all uses for thirty days, but rather equates ownership with 'having the use' of a vehicle for that period." *Ardt*, 233 Mich App at 690. The Court added that because "the phrase 'having the use thereof' appears in tandem with references to renting or leasing," the implication is "that ownership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another." *Id*. at 690-691 (emphasis in original). The Court in *Ardt* concluded that on the facts of that case, there remained a genuine issue of fact regarding whether the injured driver qualified as an owner.[1]

In *Kessel v Rahn*, 244 Mich App 353, 357-358; 624 NW2d 220 (2001), the plaintiff's mother bought the car at issue and was the title owner. The plaintiff's mother had bought the car "with the intent that [the] plaintiff was to use it," and gave the plaintiff permission to use the car "conditioned on plaintiff's maintaining insurance on the vehicle . . . ." *Id*. The plaintiff had used the car for more than a year and "indicated that she 'pretty much' had exclusive use of the vehicle during that time, using the vehicle to go to work, transport her kids, and for any other use that she needed it for." *Id*. at 357. This Court determined that, under the circumstances, the

---

[1] Specifically, one witness testified that the injured driver exhibited a "spotty and exceptional pattern of . . . usage," whereas another witness testified that he exhibited a "regular pattern of unsupervised usage." *Ardt*, 233 Mich App at 691.

plaintiff had exhibited "a sufficient proprietary or possessory use of the vehicle for more than thirty days, thus coming within the definition of 'owner' under § 3101." *Id*. at 358.

In *Chop v Zielinski*, 244 Mich App 677, 680-682; 624 NW2d 539 (2001), the plaintiff's ex-husband was the title owner of the car, although the plaintiff believed that she had been awarded the car in the divorce judgment. Between the divorce and the accident that gave rise to the case, a period of approximately five months, the plaintiff "kept the car parked at her apartment complex, . . . drove the car to and from work on a daily basis, and used the car for other personal errands." *Id*. at 680-681. This Court found that the "[p]laintiff's use of the car in such a manner was possessory use that comports with the concepts of ownership." *Id*. at 681. The Court explained that there was "no indication that plaintiff used the car under the specific direction of her ex-husband or with her ex-husband's permission." *Id*.

In *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490, 491; 775 NW2d 151 (2009), the injured driver, Maria Jimenez, "may have lived with" Jose Gonzalez, the father of her two children and the title owner of the car. *Id*. at 491-492. This Court recounted her usage of the car:

> [T]he car was kept at Jimenez's residence; she used the vehicle, primarily for grocery shopping, approximately seven times over the course of about a month; she had to get permission and the keys from Gonzalez to use the vehicle, although permission may never have been denied; she fueled the car, but Gonzalez was otherwise responsible for maintenance; and he had stopped using the vehicle, as he had use of another. [*Id*. at 492.]

This Court found that under these facts, Jimenez did not own the car under MCL 500.3101(2)(h)(*i*):

> Here, Jimenez did not "hav[e] the use" of the vehicle "for a period that is greater than 30 days." There was no transfer of a right of use, but simply an agreement to periodically lend. The permission was not for a continuous 30 days, but sporadic. Similar to the vehicle in *Chop*, the car was kept at Jimenez's residence. Moreover, she clearly had a significant relationship with Gonzalez such that permission to use the vehicle apparently was never denied. However, unlike the driver in *Ardt*, there was no evidence that Jimenez had "regular" use of the car. Also, contrary to the plaintiff in *Chop*, Jimenez did not believe that she had any right of ownership and she did not have unfettered use. She had to ask permission and had to be given the keys. While there are facts in common with *Chop* and *Ardt*, these facts, by themselves, do not establish ownership. The need for permission distinguishes this case from *Chop* . . . , and the lack of any evidence of regular use distinguishes this case from *Ardt*. [*Detroit Med Ctr*, 284 Mich App at 493-494.]

In the case at hand, plaintiff had been driving the Freightliner for three or four months before the accident. However, there was no one particular truck that plaintiff drove all the time. As he explained, "I'd drive one for a little while and then I'd get into another one, whichever one was available. I mean it was months at a time—stretches in the same vehicle." Plaintiff received

-4-

Forrest's permission before using one of his trucks for a job. Plaintiff would take a truck to his house "[e]very once in a while," but usually would return the trucks to Forrest "so he could do service on them when we got back." Plaintiff testified that Forrest generally paid for gas and repairs to the trucks, although plaintiff would pay for minor repairs and oil when he was on the road. Plaintiff denied having any ownership interest in the Freightliner. He testified that he also did not have personal use of the Freightliner.

Given the foregoing facts, plaintiff did not qualify as an owner of the Freightliner under MCL 500.3101(2)(h)(*i*). Although he had used the Freightliner for more than 30 days, his use of the vehicle did not comport with concepts of ownership. Plaintiff did not have proprietary or possessory use of the Freightliner.

We affirm the trial court's determination that plaintiff was not the owner of the vehicle.[2] Appellee Great West, as the prevailing party, may tax its costs pursuant to MCR 7.219.


/s/ Jane M. Beckering
/s/ Kathleen Jansen

---

[2] Our holding is limited to whether plaintiff was the owner of the Freightliner. We do not consider whether plaintiff was self-employed, an employee of Forrest, or an independent contractor, which issues are not before this Court on appeal. Nor do we consider any other issue regarding the applicability of MCL 500.3114(3).