# STATE OF MICHIGAN

# COURT OF APPEALS

CLAYTON CLINE,

Plaintiff-Appellant,

v

ALLSTATE INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
June 21, 2018

No. 336299
Wayne Circuit Court
LC No. 15-014105-NI

Before: BECKERING, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

In this breach-of-contract action involving plaintiff's entitlement to uninsured motorist benefits and no-fault personal protection insurance benefits (PIP benefits) under an automobile policy issued by defendant, Allstate Insurance Company (Allstate), plaintiff appeals as of right the trial court's order dismissing his complaint with prejudice. We affirm.

This case arose out of a motor-vehicle accident on November 3, 2012. Plaintiff was a passenger in a 1988 Chevy S10 pickup truck that was struck by another vehicle, causing significant injuries that required hospitalization and continue to require ongoing medical treatment. Paula Rzendzian was driving the truck at the time of the accident. The truck was not insured and was titled to Bryan Keene.

Plaintiff—who resided with his mother, Kathleen Cline, at the time of the accident—filed a claim for uninsured motorist benefits as a resident relative under Kathleen's automobile policy with Allstate. Allstate denied coverage because it believed that plaintiff was the owner of the uninsured truck involved in the accident and, therefore, was not entitled to uninsured motorist benefits under Kathleen's policy. In response, plaintiff filed a complaint against Allstate alleging breach of contract.

Allstate moved for summary disposition under MCR 2.116(C)(10), arguing that, as the owner of the uninsured truck, plaintiff was not entitled to uninsured motorist benefits under the policy as a matter of law. Allstate contended that deposition testimony elicited during prior

-1-

litigation[1] established that, on August 10, 2012, plaintiff purchased the subject truck and, thereafter, regularly used the truck until the November 3, 2012 accident without maintaining insurance as required under Michigan's no-fault act, MCL 500.3101(1).

To support its motion for summary disposition, Allstate relied primarily on the deposition testimony of Gary Keene—Bryan's father and the person that sold the truck—and Rzendzian. Gary testified that, in August 2012, plaintiff purchased the subject truck from him for $500. According to Gary, plaintiff paid $300 up front and was to pay $200 at a later date. Gary testified that he prepared a receipt memorializing the agreement and gave the receipt and the title—which was in Bryan's name—to plaintiff, and plaintiff left with the truck. Gary produced the handwritten receipt, which was signed only by Gary, and testified unequivocally that he sold the truck to plaintiff, despite plaintiff's signature not appearing on the receipt.

Rzendzian's testimony corroborated much of Gary's testimony. Rzendzian testified that plaintiff—who needed a new vehicle to drive to work and other places because his vehicle was "falling apart" and "ready to die"—found the truck, negotiated with Gary to purchase the truck, gave Gary money for the truck, and drove the truck home. Rzendzian was clear that she did not purchase the truck and that it was not purchased for her. Rzendzian further testified that, at the time, she had a suspended license and could not drive, and that the truck was acquired for plaintiff to use.

Rzendzian also testified that, after plaintiff acquired the truck, he began using the truck "right away," that he drove it every day to and from work or into town, and that he drove her around in the truck. Rzendzian testified that the truck was parked at plaintiff's mother's house where she and plaintiff resided, plaintiff always kept the only key to the truck on him, and she had to ask plaintiff for permission to use the truck. Rzendzian further testified that, on the night of the accident, plaintiff gave her the keys and told her to drive the truck because plaintiff, who was on parole, was worried about driving it. Rzendzian believed that plaintiff may have transferred the insurance from his prior vehicle to the truck and was worried about driving because the insurance had expired or lapsed in October 2012. According to Rzendzian, plaintiff was going to purchase insurance for the truck as soon as he got money. Further, Rzendzian's grandmother, Joyce Gusa, testified that she understood that plaintiff was going to register the truck in his name based on what Rzendzian told her, as well as statements made by plaintiff that he could not "transfer over . . . everything," i.e., the title and registration, until he had more money.

Rzendzian also testified that, following the accident, plaintiff told her that he had filed a lawsuit and was going to "get back a lot of money" and instructed her to say that the truck was "just parked" at his mother's house, which, according to Rzendzian, was not true because the truck was their main vehicle for transportation and they drove the truck. Gusa also testified that

---

[1] The parties refer to a prior lawsuit brought by Munson Medical Center against Allstate for nonpayment of PIP benefits related to plaintiff's hospitalization. Multiple depositions were taken during the course of that lawsuit, which apparently settled in 2014.

Rzendzian told her that plaintiff had instructed her to tell the insurance company that she (Rzendzian) owned the truck so he would not get "in trouble."

Plaintiff filed a response to Allstate's motion, denying that he was the owner of the truck and arguing that material facts surrounding the truck's ownership were in dispute.[2] Plaintiff's motion relied primarily on his own deposition testimony, wherein he denied purchasing or ever driving the truck. Regarding the purchase, plaintiff testified that Rzendzian bought the truck from Gary, and plaintiff was there to inspect the truck as a mechanic for Rzendian, who was his friend and had asked him to look at it for her. According to plaintiff, after he looked at the engine and talked to Gary about how the motor runs and when the truck last had an oil change or tune-up, he said that the truck was worth the money. Plaintiff testified that Rzendzian then discussed the "money and title" with Gary, and she and Gary came to an agreement for the sale of the truck. According to plaintiff, Rzendzian left Gary's house with the truck and plaintiff left in his work vehicle. Plaintiff denied discussing "money or title" with Gary, giving Gary money, providing money towards the purchase of the truck, or seeing a receipt.[3]

Regarding the use of the truck, plaintiff denied that he ever drove the truck.[4] Plaintiff also pointed to the testimony of Gusa, who lived three or four miles away, that she never saw plaintiff drive the truck and believed he did not drive it, or, if he did, it was only on a few

---

[2] Because it was apparent that Allstate did not intend to pay PIP benefits for plaintiff's continued treatment based on plaintiff's alleged status as the owner of the truck, plaintiff also amended his complaint to add a claim alleging breach of contract for failing to pay the PIP benefits and sought a declaration that he was not the owner of the truck involved in the accident.

[3] Rzendzian also testified that she never saw Gary provide a receipt or contract.

[4] The extent of plaintiff's November 1, 2013 testimony regarding his use of the vehicle was as follows:

*Q.* And did you ever drive that vehicle [the truck] at any point?

*A.* No. And I'm willing to take a lie detector to that.

We note that plaintiff provided further testimony at his May 6, 2016 deposition, which he provided to this Court on appeal. However, plaintiff's May 6, 2016 deposition testimony was not included as an exhibit to plaintiff's response to Allstate's motion for summary disposition, nor was it included in the lower court record provided to this Court. "This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Additionally, in evaluating a motion for summary disposition, this Court's review is limited to the evidence that was actually presented to the trial court at the time the motion was decided, *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009), and this testimony was not before the trial court when it made its ruling. Accordingly, we do not consider testimony from plaintiff's May 6, 2016 deposition in our opinion.

occasions.[5]  Plaintiff also noted that Rzendzian, not plaintiff, was driving the truck on the night of the accident.  Additionally, he pointed to Rzendzian's testimony indicating he had access to other work vehicles.[6]  Plaintiff also attempted to discredit Rzendzian's testimony by pointing to testimony indicating that she and Gusa had a motive to deny that Rzendzian owned the truck because they believed Rzendzian would "get into trouble" if she was determined to be the owner of the truck.

After conducting a hearing on the motion for summary disposition, the trial court found that plaintiff was a constructive owner of the uninsured truck involved in the accident, granted Allstate's motion, and dismissed plaintiff's breach-of-contract claim.  Shortly thereafter, the trial court dismissed plaintiff's complaint as a whole because none of his claims were viable in light of the trial court's conclusion that plaintiff was the owner of the uninsured vehicle.  After the trial court denied plaintiff's motion for reconsideration, plaintiff appealed.

On appeal, the sole issue raised by plaintiff is whether the trial court erred in finding that plaintiff was as an "owner" of the uninsured truck involved in the accident and, therefore, was excluded from recovering PIP benefits under his mother's insurance policy issued by Allstate.[7]

We review de novo a trial court's decision regarding a motion for summary disposition. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999).  The trial court granted summary disposition under MCR 2.116(C)(10).  "A trial court tests the factual support of a plaintiff's claim when it rules upon a motion for summary disposition filed under MCR 2.116(C)(10)." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).  MCR 2.116(C)(10) provides for summary disposition where '[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."  "When reviewing an order of summary disposition under MCR 2.116(C)(10), we examine all relevant documentary evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists on which reasonable minds could differ." *Ardt*, 233 Mich App at 688.  "Where the moving party has produced evidence in support of the motion, the opposing party bears the burden of producing evidence to establish that a genuine issue of disputed fact exists." *Id.*  "Accordingly, the moving party 'must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact,' MCR 2.116(G)(4), and must support his or her belief with affidavits, depositions, admissions, or other documentary evidence, MCR 2.116(G)(3)." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc,* 285 Mich App 362, 376-377; 775

---

[5] Gusa also testified that she did not know how much plaintiff drove the truck before the accident because she "wasn't close enough to him to see anything at the house."

[6] Rzendzian also testified that plaintiff did not drive the work vehicles often or did not "really drive them."

[7] On appeal, plaintiff limited his argument to his entitlement to PIP benefits.  He did not address or provide any analysis regarding his entitlement to uninsured motorist benefits under his mother's insurance policy.  Thus, this issue has been abandoned on appeal. *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008).

NW2d 618 (2009). "Likewise, once a party makes a properly supported motion under MCR 2.116, the adverse party 'may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, *set forth specific facts* showing that there is a genuine issue for trial.' " *Id.* at 377, quoting MCR 2.116(G)(4) (emphasis in *Barnard*). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In evaluating whether a factual dispute exists to warrant trial, "[t]he court is not permitted to assess credibility or to determine facts on a motion for summary judgment." *Skinner*, 445 Mich at 161. "Instead, the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Id*. To the extent this issue requires application of the no-fault act, our review is de novo. *Cruz v State Farm Mut Auto Ins Co,* 466 Mich 588, 594; 648 NW2d 591 (2002).

MCL 500.3101(1) of Michigan's no-fault act "requires the owner or registrant of a motor vehicle to carry insurance for personal protection, property protection, and residual liability." *Ardt*, 233 Mich App at 689. MCL 500.3113(b) "further provides that the owner of an uninsured motor vehicle is not entitled to personal protection insurance benefits for bodily injury resulting from an accident involving that vehicle."[8] *Ardt*, 233 Mich App at 689. Thus, "MCL 500.3113(b) precludes owners of uninsured vehicles from receiving personal protection insurance benefits." *Twichel v MIC General Ins Corp*, 469 Mich 524, 527; 676 NW2d 616 (2004). There is no dispute that, at the time of the accident, the subject truck was not insured. Therefore, in order for plaintiff to recover PIP benefits as a resident relative under his mother's insurance policy, MCL 500.3114(1),[9] he could not have been an "owner" of the subject truck at the time of the accident. *Ardt*, 233 Mich App at 689.

---

[8] MCL 500.3113(b) provides:

A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

\* \* \*

(b) The person was the owner or registrant of a motor vehicle . . . involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect.

[9] MCL 500.3114(1) provides, in pertinent part:

[A] personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.

Pertinent to this case, "owner" is statutorily defined to include "[a] person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days." MCL 500.3101(2)(h)(*i*).[10] Our Supreme Court has instructed that, in determining whether a person is considered an "owner" under MCL 500.3101(2)(h)(*i*), the proper focus is on the nature of the person's right to use the vehicle for a period greater than 30 days. *Twichel*, 469 Mich at 530-532. This Court has defined "having the use of a motor vehicle" for purposes of defining "owner" under the Act as meaning "using the vehicle in ways that comport with concepts of ownership." *Ardt*, 233 Mich App at 690. "[O]wnership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another." *Id.* at 691; see also *Chop v Zielinski*, 244 Mich App 677, 681-682; 624 NW2d 539 (2001); *Kessel v Rahn*, 244 Mich App 353, 358; 624 NW2d 220 (2001). Accordingly, a "regular pattern of unsupervised usage" or "unfettered use" in ways comporting with ownership—rather than "spotty and exceptional" use that requires permission—supports a finding of ownership under MCL 500.3101(2)(h)(*i*). *Chop*, 244 Mich App at 682; *Kessel*, 244 Mich App at 358; *Ardt*, 233 Mich App at 691. Further, where permission is required before use, there is "no transfer of a right of use" and the driver would not qualify as an owner under MCL 500.3101(2)(h)(*i*). *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490, 493-494; 775 NW2d 151 (2009). Moreover, to qualify an "owner" under MCL 500.3101(2)(h)(*i*), a person does not need to actually have used the vehicle for more than 30 days before the accident. *Twichel*, 469 Mich at 530-532. Nothing in the definition of "owner" under MCL 500.3101(2)(h)(*i*) requires "that a person has at any time *actually used* the vehicle." *Id.* at 530-531. Rather, the person must have had the right to use the vehicle for a period greater than 30 days. "It is the nature of the right to use the vehicle—whether it is contemplated that the right to use the vehicle will remain in effect for more than thirty days—that is controlling, not the actual length of time that has elapsed." *Id.* at 531-532.

In the instant case, the evidence presented by Allstate established that plaintiff entered into an agreement with Gary to purchase the subject truck for plaintiff's own use, made a partial payment, took immediate possession of the truck, and then actually used the truck as an owner, thereby demonstrating that plaintiff had a continuous right to use the truck after acquiring it from Gary. As in *Twichel*, the agreement between Gary and plaintiff was for a "permanent transfer of ownership" of the truck to plaintiff, contemplating that plaintiff would have exclusive use of the truck. *Twichel*, 469 Mich at 531-532. Additionally, plaintiff's regular and unsupervised use of the truck after acquiring it, attested to by Rzendzian, further established that he had a right to use the truck—and actually did use the truck—in a manner comporting with ownership. See *Chop*, 244 Mich App at 682; *Kessel*, 244 Mich App at 358; *Ardt*, 233 Mich App at 691. Therefore,

---

[10] On the date of the accident, on November 3, 2012, this was the definition of owner. See 2008 PA 241, effective July 17, 2008. MCL 500.3101 was amended by 2014 PA 492, effective January 13, 2015, which moved the definition to MCL 500.3101(2)(k)(*i*). MCL 500.3101 was subsequently amended by 2017 PA 140, effective October 20, 2017, which moved the definition to MCL 500.3101(2)(*l*)(*i*). Although the language of the current provision differs slightly as a result of 2014 PA 492, the changes were not substantive. Regardless, in this opinion, we refer to the version of the statute that was in effect at the time of the accident.

Allstate supported its summary disposition motion with evidence establishing that plaintiff had the right to use the truck for more than 30 days and, thus, was as an owner of the uninsured truck under MCL 500.3101(2)(h)(*i*). *Barnard Mfg*, 285 Mich App at 376-377.

However, plaintiff's deposition testimony—presented in opposition to Allstate's motion—claimed that Rzendzian, not plaintiff, purchased the truck from Gary, and plaintiff denied ever driving the truck. This clearly disputed Allstate's evidence asserting that plaintiff bought the truck and drove it on a regular basis, sufficiently creating a question of fact whether he purchased and drove the truck. But an inquiry into ownership under MCL 500.3101(2)(h)(*i*) goes beyond these facts, and the appropriate focus is on plaintiff's *right* to use—not actual use of—the truck for more than 30 days. *Twichel*, 439 Mich at 530-532. And plaintiff failed to dispute—with specific facts, as was his burden, *Barnard Mfg*, 285 Mich App at 377—the testimony indicating that he had a continuous right to use the truck once it was acquired, *Twichel*, 469 Mich at 530-532.

Rzendzian, who had a suspended license and was unable to drive at the time the truck was purchased, inferred that the truck was acquired for plaintiff's use. Her testimony in this regard was not disputed. While plaintiff denied actually purchasing the truck, he presented no testimony regarding his right—or lack of right—to use the truck once it was acquired. Rzendzian also testified that the truck was kept at plaintiff's mother's residence—where she had resided with plaintiff—and plaintiff always kept the only key to the truck on him, suggesting that plaintiff had access to the truck and could use the truck at his discretion and without permission. Again, this testimony was undisputed. Rzendzian further testified that she had to ask plaintiff for permission to use the truck if she needed to borrow it, and, on the date of the accident, plaintiff gave her the keys and told her to drive, suggesting that plaintiff exercised possession and control over the truck.[11] Gusa testified, based on statements that Rzendzian and plaintiff made after the truck was acquired, that plaintiff was planning to transfer the title and register the truck in his name when he got the money to do so,[12] and Rzendzian testified that plaintiff was going to obtain insurance on the truck as soon as he got the money to do so, suggesting that plaintiff believed he was responsible for maintaining the insurance for the truck and registering it in his name. This testimony was not disputed.

All of this undisputed testimony sufficiently established that plaintiff's conduct with respect to the truck after it was acquired was in a manner that clearly comports with ownership, even if he denied purchasing or driving the truck. *Ardt*, 233 Mich App at 690 ("[H]aving the

---

[11] Plaintiff gave a different account of these events in his May 2016 deposition testimony, but, again, because that deposition testimony was not part of the lower court record and was never before the trial court, and because plaintiff did not move to expand the record on appeal, we do not consider that testimony. See *Hallman v Holy Cross Hosp of Detroit*, 475 Mich 874, 874 (2006) ("The panel erred in allowing defendants to expand the record without first having moved to do so.").

[12] Plaintiff testified that he never discussed the title with Gary and that only Rzendzian did. However, plaintiff never addressed whether the title was to be transferred to him in the future.

use" of a vehicle "means using the vehicle in ways that comport with concepts of ownership."). As *Twichel* instructs, the proper focus in determining whether a person is an owner is on the nature of the person's right to use the vehicle for a period exceeding 30 days, not on whether he *actually used* the vehicle. *Twichel*, 469 Mich at 530-532. While plaintiff's testimony may have created a factual dispute regarding whether he or Rzendzian purchased the truck and whether plaintiff actually drove the truck, plaintiff did not present any evidence specifically disputing Rzendzian's testimony that plaintiff had a right to use the truck after it was acquired. In fact, the undisputed testimony established that plaintiff acted in ways clearly comporting with ownership.

On these undisputed facts, we conclude that reasonable minds could not differ regarding whether plaintiff had a continuous right to use the truck after it was acquired and, thus, was a person "having the use" of the truck for over 30 days within the meaning of MCL 500.3101(2)(*l*)(*i*). See *Twichel*, 469 Mich at 530-532. After the truck was acquired, regardless of who acquired it or whether plaintiff actually drove it, plaintiff had a right to use it, as evidenced by Rzendzian's undisputed testimony that the truck was acquired for plaintiff's use and that plaintiff acted in a proprietary and possessory manner comporting with ownership of the truck. *Ardt*, 233 Mich App at 690-691 (stating that ownership implies proprietary or possessory use). Under these circumstances, plaintiff failed to create a genuine issue of material fact regarding whether he qualified as an "owner" within the meaning of MCL 500.3101(2)(*h*)(*i*). *West*, 469 Mich at 183. Accordingly, the trial court properly determined that plaintiff was an owner of the uninsured truck, thereby precluding his entitlement to PIP benefits, MCL 500.3113(b). Therefore, the trial court did not err in dismissing plaintiff's complaint.[13]

Affirmed.

/s/ Jane M. Beckering
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

---

[13] Plaintiff also argues that he was not an owner under MCL 500.3101(2)(h)(*iii*), but we need not address this argument based on our conclusion that he was an owner under subsection (h)(*i*).