*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

INFINITY PHYSICAL THERAPY LLC and PRIME MEDICAL TRANSPORT LLC,

        Plaintiffs-Appellants,

v

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
July 18, 2024

No. 364890
Wayne Circuit Court
LC No. 22-002812-NF

ALIGNED CHIROPRACTIC LLC,

        Plaintiff-Appellant,

v

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

        Defendant-Appellee.

No. 364896
Wayne Circuit Court
LC No. 22-002644-NF

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

A person having the use of a motor vehicle for more than 30 days may be deemed a constructive owner of the vehicle and be denied recovery under the no-fault act if the person fails to maintain mandatory no-fault coverage. This includes a bar to coverage by assignment under the Michigan Assigned Claims Plan (MACP) and Michigan Automobile Insurance Placement Facility (MAIPF).

Here, Elijah Smith possessed a 2010 Chevrolet Impala for approximately nine months, had the only set of keys, and was the only driver. He retained the vehicle for months after its titled

owner, Mildred Wainwright, died and Smith exhibited no intent to return the car to her family. Even accepting as true that he drove the vehicle only three to four times, Smith had sole control and possession of the vehicle and its only set of keys. The trial court properly determined Smith was a constructive owner as a matter of law. As a constructive owner, Smith was required to ensure the vehicle had mandatory no-fault coverage before driving it. Because Smith was the owner and operator of an uninsured vehicle at the time of his November 2020 accident, he cannot claim no-fault benefits under any no-fault policy or through the MACP/MAIPF. The medical providers who treated Smith and were assigned his right to collect benefits, stand in Smith's shoes and also cannot claim no-fault benefits. The trial court properly granted summary disposition in favor of defendant, Nationwide Mutual Fire Insurance Company (Nationwide). We affirm.

## I. BACKGROUND

Smith was injured in a motor vehicle accident in November 2020, while driving an Impala titled to Wainwright. Following the accident, Smith received services from and assigned his right to collect benefits to Infinity Physical Therapy LLC, Prime Medical Transport LLC, and Aligned Chiropractic LLC (collectively plaintiffs). Smith was not the registered or titled owner of any vehicle at the time of the accident and neither possessed a no-fault insurance policy nor lived with anyone carrying a no-fault policy. Accordingly, Smith filed an application for coverage with the MAIPF. The claim was assigned to Nationwide.

In his MAIPF application, Smith indicated he was driving Wainwright's Impala during his accident and that neither he nor Wainwright possessed no-fault insurance. Smith denied using the Impala before the date of the accident, explaining he "was borrowing the vehicle for the day" and required permission before using. Smith also denied having "access to a set of keys" for the Impala. He denied putting gas in the vehicle or paying any money toward its purchase or maintenance. Strangely, Smith checked the "no" box after the question: "Did you have permission to use the vehicle/motorcycle on the date of the accident?"

Plaintiffs filed claims with Nationwide, but Nationwide "refused to pay." Plaintiffs then filed this first-party, no-fault action for personal protection insurance (PIP) benefits. In its affirmative defenses, Nationwide asserted Smith was not entitled to coverage under MCL 500.3113 based on Smith's "ownership of the uninsured motor vehicle involved in the accident."

During discovery, Smith was deposed over two days. On the first day, Smith testified that he had borrowed the Impala from Wainwright "[a]bout three or four times," with the fourth being the day of his accident. Smith was confused about when Wainwright passed away and how long he possessed the vehicle. Specifically, Smith believed he borrowed the vehicle about two to three weeks before the accident. Smith was attempting to purchase the car and he and Wainwright were negotiating a price. The vehicle required a "tune-up," but Smith could not afford the maintenance immediately. Accordingly, Smith asserted he possessed the vehicle but did not drive it. Smith claimed that in the weeks he possessed the car before the accident, Wainwright did not mention the vehicle. Smith further testified that when she lent him the car, Wainwright "asked me what I had to use it for" and "when I was bringing it back," but "didn't designate a time for me to bring it back." Smith had the keys to the vehicle while it was in his possession and he put gas in it.

Smith initially stated Wainwright died in March 2021, and was alive at the time of his accident. In actuality, Wainwright passed away on March 5, 2020, nearly nine months before Smith's accident. On the second day of his deposition, Smith agreed that he borrowed the Impala before Wainwright passed away and still had the vehicle in his possession after her death. Smith conceded he was the only person who drove the Impala during that time period, and he had the only set of keys. Smith claimed he did not attempt to insure the vehicle because "[i]t was not my car to insure myself." Smith did not know if Wainwright had any insurance over the vehicle when he borrowed it.

Following discovery, Nationwide sought summary disposition, contending that Smith was a constructive owner of the Impala. As an owner, Smith was required to secure no-fault coverage for the vehicle but failed to do so. Nationwide contended that Smith was barred from recovering no-fault benefits because he was the owner of an uninsured motor vehicle involved in the accident. Plaintiffs, as Smith's assignees, were similarly barred from recovery. Plaintiffs retorted that Smith was merely a permissive user who was not required to insure the borrowed vehicle.

Based on the length of time he possessed the car and its only set of keys, was driving a vehicle owned by a deceased individual, and was the only person with access to the vehicle, the court concluded Smith was a constructive owner as a matter of law. Because Smith was an owner who did not insure his vehicle, he was barred from recovering PIP benefits. Because Smith was ineligible, the providers to whom he assigned his rights were ineligible as well.

Plaintiffs now appeal.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a summary disposition motion. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). That means we review the issue independently, with no required deference to the trial court. *Millar v Constr Code Auth*, 501 Mich 233, 237; 912 NW 2d 521 (2018). When deciding a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil*, 504 Mich at 160. If the moving party properly asserts and supports its motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The trial court must only grant summary disposition under MCR 2.116(C)(10) "when there is no genuine issue of material fact," meaning that "the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citations omitted).

We also review "de novo the interpretation and application of a statute as a question of law. If the language of a statute is clear, no further analysis is necessary or allowed." *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

## III. ANALYSIS

The trial court correctly determined Smith was a constructive owner of the Impala as a matter of law and that he and his assignees were barred from recovering PIP benefits based on Smith's failure to secure statutorily required no-fault insurance.

A.  LEGAL PRINCIPLES

MCL 500.3101(1) mandates "the owner or registrant of a motor vehicle required to be registered in this state" to "maintain" no-fault insurance including PIP coverage.  A vehicle may have more than one owner under the no-fault act.  *Ardt v Titan Ins Co*, 233 Mich App 685, 691-692; 593 NW2d 215 (1993).  An "owner" is defined, in relevant part, as "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days."  MCL 500.3101(3)(*l*)(*i*).  MCL 500.3113 states: "A person is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident" any one of several circumstances existed.  Of relevance to this appeal, an "owner . . . of a motor vehicle . . . involved in the accident with respect to which" the insurance required by MCL 500.3101 "was not in effect" is barred from recovery.  MCL 500.3113(b).  See *Twichel v MIC Gen Ins Corp*, 469 Mich 527; 676 NW2d 616 (2004).  Such individuals are also "disqualified from receiving benefits" through the MAIPF and MACP.  MCL 500.3173.

As a general rule, "[t]he question of ownership is one of fact that is to be decided by the factfinder."  *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127, 133; 489 NW2d 137 (1992).  Constructive ownership is not defined in the no-fault act.  This Court has defined the phrase "having the use of a motor vehicle" for purposes of being an "owner" as "using the vehicle in ways that comport with concepts of ownership."  *Ardt*, 233 Mich App at 690.  As explained in *Ardt*, 233 Mich App at 690-691:

> The statutory provisions at issue operate to prevent users of motor vehicles from obtaining the benefits of [PIP] without carrying their own insurance through the expedient of keeping title to their vehicles in the names of family members.  Because we infer from these provisions that they were enacted in furtherance of the sound public policy imperative that users of motor vehicles maintain appropriate insurance for themselves as indicated by their actual patterns of usage, we hold that "having the use" of a motor vehicle for purposes of defining "owner," means using the vehicle in ways that comport with concepts of ownership.  The provision does not equate ownership with any and all uses for thirty days, but rather equates ownership with "having the use" of a vehicle for that period.  Further, we observe that the phrase "having the use thereof" appears in tandem with references to renting or leasing.  These indications imply that ownership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another.

"It is the nature of the right to use the vehicle whether [sic] it is contemplated that the right to use the vehicle will remain in effect for more than thirty days that is controlling, not the actual length of time that has elapsed."  *Twichel*, 469 Mich at 532.

B.  CASELAW DEFINING OWNERSHIP

The parties each cite various cases to support their positions and disagree regarding their meaning and importance.  We consider each in turn.

-4-

In *Ardt*, 233 Mich App at 689, witnesses provided inconsistent testimony about the injured party's use of an uninsured vehicle owned by and titled to his mother. One witness described the injured party as a "regular driver of the truck for more than 30 days," while another stated he "drove the car only a few times and then normally only for such minor purposes as having it washed." *Id*. Keeping in mind that a constructive owner must have "*proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another," this Court determined there remained a question of fact regarding the injured party's pattern of usage and potential ownership. *Id*. at 691.

In *Chop v Zielinski*, 244 Mich App 677, 678; 624 NW2d 539 (2001), the injured party was driving an uninsured vehicle registered and titled to her ex-husband. The injured party "regularly used the car" for approximately six months before the accident, and had its exclusive use. *Id*. at 680-681 and n 1. Moreover, the injured party mistakenly believed the divorce judgment required her ex-husband to transfer the title to her name. *Id*. at 681 n 2. The injured party parked the vehicle at her separate residence and drove it daily. No evidence supported that she only drove the vehicle at her ex-husband's direction or after securing permission. Further, the injured party's "claim that she merely borrowed the car" failed in light of her admission that she believed she was awarded the car. *Id*. at 681-682. Thus, there was no question of fact that the injured party was a constructive owner and was thereby barred from recovering no-fault benefits. *Id*. at 682.

*Kessel v Rahn*, 244 Mich App 353, 354-355; 624 NW2d 220 (2001), involved the definition of the term "own vehicle" in the former MCL 500.3135, which barred third-party tort recovery by an individual driving their "own vehicle" without the statutorily required insurance. The injured party in *Kessel* was driving an uninsured vehicle titled in her mother's name. *Id*. at 354. This Court looked to caselaw defining constructive ownership for the purposes of PIP entitlement. *Id*. at 355. The injured party admitted she had exclusive use of the vehicle for the past year and drove it whenever she needed. The titled owner testified the injured party kept the vehicle at her own home, the vehicle was purchased specifically for the injured party's use, and the injured party was responsible for insurance and maintenance. Had the titled owner known the injured party failed to maintain insurance, she would have retaken possession of the vehicle. *Id*. at 357-358. This Court determined the injured party was an owner as a matter of law, and was barred from tort recovery for driving an uninsured vehicle. *Id*. at 358. This Court reasoned: "Imposing the responsibilities of an owner to maintain insurance on a person who has proprietary or possessory use of an automobile for more than [30] days clearly promotes the objectives of the mandatory insurance provisions, while not imposing unreasonable burdens on the casual user," such as a person "driving a friend's car to the store and back." *Id*. at 359.

In *Twichel*, 469 Mich at 526, the decedent was driving a truck he was purchasing from a friend. The decedent paid $300 of the $3,600 purchase price and agreed "to pay the remainder at a later date." The decedent took possession, but the friend retained title until all payments were made. The decedent had possessed the truck for five days before his fatal accident. *Id*. Although the decedent had not secured no-fault insurance for the truck by the time of the accident, he lived with his grandfather, who had a no-fault policy through the defendant insurer. The defendant asserted it was not bound to provide coverage for the decedent's accident because he was the owner of an uninsured vehicle involved in the accident. *Id*. at 527. The *Twichel* Court held that a person may be deemed an owner even if he has not used the vehicle for a full 30 days. "The focus must be on the nature of the person's right to use the vehicle." *Id*. at 530. "Nothing in the plain

language" of the statute's definition of "owner" "requires (1) that the person has at any time *actually used* the vehicle, or (2) that the person has *commenced* using the vehicle at least [30] days before the accident occurred." *Id*. The decedent was an "owner," the Court concluded, because the sale arrangement "was for the permanent transfer of ownership of the vehicle and it contemplated that the deceased would have exclusive use of the truck permanently." *Id*. at 531.

In *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490, 491; 775 NW2d 151 (2009), the injured party was driving an uninsured vehicle titled to the father of her children. *Id*. at 491-492. The vehicle was kept at the injured party's home (where the titled owner "may have lived with her") and she had driven it approximately seven times in the month leading up to the accident, primarily to go grocery shopping. The injured party claimed she had to ask for permission and the keys from the titled owner before taking the car, but he never denied permission. She claimed she continued to require permission even though the titled owner never used the subject vehicle after purchasing another. The injured party had refueled the vehicle in the past, but the titled owner handled all other maintenance. *Id*. at 492. This Court looked to *Chop*, *Ardt*, and *Twichel* to resolve the ownership issue:

> Here, [the injured party] did not "hav[e] the use" of the vehicle "for a period that is greater than 30 days." There was no transfer of a right of use, but simply an agreement to periodically lend. The permission was not for a continuous 30 days, but sporadic. Similar to the vehicle in *Chop*, the car was kept at [the injured party's] residence. Moreover, she clearly had a significant relationship with [the titled owner] such that permission to use the vehicle apparently was never denied. However, unlike the driver in *Ardt* there was no evidence that [the injured party] had "regular" use of the car. Also, contrary to the plaintiff in *Chop*, [the injured party] did not believe that she had any right of ownership and she did not have unfettered use. She had to ask permission and had to be given the keys. While there are facts in common with *Chop* and *Ardt*, these facts, by themselves, do not establish ownership. The need for permission distinguishes this case from *Chop* and *Twichel*, and the lack of any evidence of regular use distinguishes this case from *Ardt*. Accordingly, the trial court did not err when it concluded that [the injured party] was not an owner of [the] vehicle. [*Detroit Med Ctr*, 284 Mich App at 493-494.]

Finally, plaintiffs rely on the unpublished opinion of *Cheema v Progressive Marathon Ins Co (On Reconsideration)*, unpublished per curiam opinion of the Court of Appeals, issued September 29, 2022 (Docket No. 355910). This unpublished case is not binding, MCR 7.215(J), and it is too factually dissimilar to be of any persuasive value. See *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). *Cheema* involved a plaintiff, Harris Cheema, who owned a medical transport company, co-plaintiff, Overland Transportation. *Cheema*, unpub op at 2. Overland was the titled owner and registrant of a fleet of vans used to transport clients to medical appointments. Cheema owned and managed the company, and assigned employees to drive vans on certain routes. When Cheema served as a driver, he paid himself as a driver. *Id*. at 2, 12. Cheema was injured in an accident in an Overland van. At the time, he was running an errand between transporting clients. *Id*. at 3. Cheema indicated he sometimes ran errands on his routes. *Id*. at 2, 12. However, Cheema had personal vehicles registered in his name that he drove for personal reasons. *Id*. at 12.

The insurer rescinded Overland's no-fault policy for reasons not relevant to the issues now before us. *Id*. at 4. The question remained whether Cheema was a constructive owner or co-owner of the Overland vans such that he would be barred from PIP recovery for driving an uninsured vehicle. The insurer "presented evidence that Cheema controlled access to the [van] and could, in theory, make use of the [van] at any time and for any purpose." *Id*. at 11. This Court determined a question of fact remained, precluding summary disposition:

> Cheema's testimony permitted an inference that[] Cheema did not have unfettered use of the [van] for purposes outside of Overland's business and that he respected the limitations on that use. In the absence of evidence that Cheema routinely misused his status as the owner of Overland to treat Overland's vehicles as personal vehicles, a reasonable finder of fact could conclude from Cheema's testimony that he did not have more than incidental use of the [van] with the permission of his employer, Overland. Stated another way, a reasonable finder of fact could conclude that Cheema respected the limitations on his use of the [van] imposed by Overland's policies and, therefore, was not an owner within the meaning of MCL 500.3101(3)(*l*)(*i*). [*Id*. at 13 (citation omitted).]

## C. APPLICATION

The trial court correctly found no triable question of fact regarding constructive ownership in this case. Smith essentially converted the Impala from Wainwright's estate following her death. From March 5, 2020, through November 28, 2020, Smith retained the vehicle without paying Wainwright's estate and kept the only set of keys. Even if Smith only drove the vehicle three to four times during this period, he did so without asking permission given that the only person who could grant permission was dead. He filled the tank with gas and would have secured a "tune-up," but could not afford it. During this nine-month period, Smith acted as the vehicle's owner.

Wainwright died on March 5, 2020, and Smith was not involved in the accident until November 28, 2020. Smith borrowed the car from Wainwright at some point before her death, and he and Wainwright were negotiating a price for him to purchase the vehicle. Smith made no attempt to return the vehicle or continue negotiating a price after Wainwright's death. Smith admitted, "I was hoping that she would just say go ahead and keep it, it's yours. . . ." Smith retained possession of the vehicle on his property. Wainwright's widower could not simply retake possession because Smith had the only set of keys to the car. By withholding the vehicle, Smith essentially converted it.[1] This was an overt act of proprietary or possessory usage.

Smith indicated he did not drive the vehicle for an extended period because it needed a "tune-up" and he could not afford the maintenance. Smith never suggested that Wainwright, as

---

[1] Common-law conversion involves a person wrongfully exerting dominion over another's property inconsistent with the other person's ownership or possessory rights. See *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015).

the vehicle's owner, should secure a tune-up. Instead, Smith's testimony reveals he believed he had the duty to secure this maintenance. Smith also testified he filled the vehicle's gas tank.

Smith stated he needed permission to drive the vehicle and was required to tell Wainwright what he was using the vehicle for. However, after March 5, 2020, Smith could not get permission to drive the vehicle as the owner was deceased. Any time Smith drove the vehicle after March 5, 2020, he did so without permission and without explanation. As described by Nationwide and accepted by the trial court, his use became "unfettered."

Accepting as true that Smith only drove the vehicle three to four times does not negate the evidence of constructive ownership. Smith was the only person with access to the vehicle and its keys, regardless of whether he acted upon that access. Smith had complete control and sole access; his constructive ownership was not based on "theoretical" use as argued by plaintiffs. Smith cannot convert a vehicle for his own use, have exclusive access to the vehicle for nine months, and then claim he had no duty to insure the vehicle before driving it. There is no question of fact in this case that Smith was the constructive owner of the uninsured Impala. The trial court properly decided this issue as a matter of law and summarily dismissed plaintiffs' action for recovery.

We affirm.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett